## L. & N. R. R. Co. v. Irby, By. et al.

(Decided December 9, 1910.)

### Appeal from Oldham Circuit Court.

1. Railroads—Injury to Brakeman—Action for Damages—Allegations —Sufficiency.—In an action by a brakeman against a railroad company for damages, he alleged that through the gross negligence and carelessness of the defendant, its agents and servants superior in authority to him, he was thrown upon the track of appellant, and run over by several cars and the engine. Held, that under these general allegations appellee could prove and recover for any gross negligence committed by positive acts, or for an omission of any act by any or all of appellant's agents

vol. 141—10

in charge of the train upon which appellee was employed, who were superior in authority to appellee.

2. Engineer Checking Train—Absence of Signal.—Appellee was by order of the conductor, and in the line of his duty upon the ends of and between two gondola cars for the purpose of riding one in on the house track, and his position was known to the conductor and engineer; the train was being moved at the rate of nine or ten miles an hour, and the engineer was without any signal from the appellee, and, in violation of his duty the engineer checked the train upon a signal from the conductor, by reason of which appellee received the injuries sued for. Held, the proof shows that the engineer had no right to check the movement of the train without first receiving a signal from the head brakeman, and for the injuries thereby received appellee was entitled to recover damages.

3. Head Brakeman—Assumption as to Duty of Engineer in Giving Signal.—Appellee, who was head brakeman on the train, had a right to assume that the engineer would perform his duty and not check the engine until he gave him the signal; therefore, as he had a right to rely upon the fidelity of the engineer, he could act with less caution than would have been incumbent on him otherwise.

4. Instructions—Errors Set Out.—The court erred to the prejudice of appellee in the first instruction by confining his right to recover to the theory that he was performing the duty referred to by order of the conductor alone. The court should have added, "or if he was performing labor at the time in the line of his duty as head brakeman, and the engineer knew that fact and that he was situated between the cars." The engineer was guilty of gross negligence when he suddenly checked the movement of the train without any warning to, or knowledge on the part of appellee that he was going to do so.

BENJAMIN D. WARFIELD, CHARLES CARROLL and D. H. FRENCH for appellant.

BRADLEY & CURETON and EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellee was head brakeman on one of appellant's freight trains, and at Pewee Valley, August 26, 1909, he fell from one of the cars in the train and suffered the loss of both legs below the knees and was otherwise injured. He instituted this action to recover damages for his injuries, and alleged as grounds for recovery that, "through the gross carelessness and negligence of the defendant, its agents, and servants, superior in au-

thority to the plaintiff, he was thrown upon the track of defendant, and several of the cars and the engine of said train ran over both of his legs and so injured them that it became necessary to and both of his legs were amputated below the knees,'' etc.

Appellant answered controverting the petition, and interposed a plea of contributory negligence in the usual form, which was denied by reply.

That a proper understanding of the grounds for a reversal may be had, it is necessary to give the substance of the testimony produced upon the trial. It appears that appellant has in Pewee Valley a main track, a passing track and a house track, all of which run north and south; that its passing track is situated on the west side of the main track and connects with it at one point several hundred feet south of the depot and at another point a quarter or half a mile north of the depot; that the house track is situated on the east side of the main track and connects therewith at points within the connections of the passing track. The train upon which appellee was head brakeman arrived at Pewee Valley about nine o'clock a. m. and went into the passing track to let a fast passenger train go by, after which it returned to the main track at the north end and backed down the main line to near the depot where it left most of its train, and then went to the house track and brought out nine cars, eight of which were to go with the train north and were kicked down the main track to be coupled to the main body of the train. This left attached to the engine its tender, one gondola car loaded with coal and an empty gondola. The empty car was to go back on the house track and appellee, as head brakeman and as was his duty, cut the air between the loaded gondola and the tender and then between the two gondolas, uncoupled them and got up between them for a double purpose, one to ride the empty car down the house track and stop it at the proper place; his other purpose was to go to the east side of the cars to give the fireman the signal so that he might give it to the engineer, when he was ready for the engine to be checked, as he could not see the engineer from the west side, there being a considerable curve in the road at that point. (The engineer occupied the right hand or west side of the engine cab, and the fireman the other.) But before he could get to the east side where he could see and give the fireman the signal, the engineer sud-

denly checked the engine without any warning to appellee causing him to fall, carrying one of the brake rods with him, which resulted in injuries to him as before stated. All the proof introduced upon the subject shows that the engineer had no right under the rules of the company to check the movement of the train under the circumstances stated, without first receiving a signal to do so from appellee, the head brakeman. At the moment the engineer checked the train, it was moving backwards at the rate of nine or ten miles an hour. The engineer and conductor knew that Irby was upon and between the cars performing his duty as ordered by the conductor. The engineer and fireman testified that the check of the train was made on a signal from the conductor who was, at least, ten car lengths from the engine on the south end of the eight cars which were disconnected from the engine and rolling down the main track, as before stated. The conductor did not testify upon this matter; that is he did not admit or deny that he gave the signal. In short, we have the following facts shown without contradiction: Appellee was, by order of the conductor and in line of his duty, upon the ends of and between the two gondola cars for the purpose of riding the empty one in on the house track, and his position was known to the engineer and conductor; that the cars were being moved at the rate of nine or ten miles an hour; that the engineer, without any signal from the appellee, and in violation of his duty checked the train upon a signal from the conductor which the conductor had no right to give, by reason of which appellee received his injuries. We quote the following from the testimony of appellee as to the immediate circumstances surrounding the accident:

"I put my right hand on the brace to go across the end of the car, and I put my left hand on the wheel and held to the top of the wheel with my left hand and let loose my hold with my right with the intention of catching with my right hand to the wheel, when the sudden jerk and spring it broke, the brake wheel broke loose and that is what threw me down. That is the last thing I remember."

Appellant says appellee was guilty of negligence in attempting to go across from the east to the west side of the car, as it was shown by the testimony that he could have signaled the engineer from the east side. The engineer and fireman testified on this point that

they did not and could not see appellee after he got upon and between the cars until after he was injured, and appellee testified that after he took the position named he could not see either the engineer or fireman; that on account of a curve in the track at that point he moved towards the west side so that he could see the fireman and signal to the engineer through him. But, conceding that appellee could have given the signal from the east side and that it was not necessary for him to go to the west side, the uncontradicted facts remain that he did not give the signal for the train to be checked and that under the circumstances no one else had a right to give such a signal, therefore the negligence of the engineer and conductor is established. Under these facts, it was not error for the court to refuse to give a peremptory instruction in favor of appellant. (L. & N. R. R. Co. v. Barrickman, 31 Ky. Law Rep., 883; L. & N. R. R. Co. v. Gordon, 24 Ky. Law Rep., 1819; I. C. R. R. Co. v. Jones, 118 Ky., 156; C., N. O. & T. P. Ry. Co. v. Evans' Adm'r, 129 Ky., 156; I. C. R. R. Co. v. Cane's Adm'x, 28 Ky. Law Rep., 1018.)

Appellant contends that the court erred in allowing appellee to prove that the brake and its attachments were defective and gave way when he fell from the cars, as he did not allege any negligence with reference to defective appliances. It is true he made no such allegation, but this does not render such testimony incompetent as appellant interposed a plea of contributory negligence on the part of appellee, but for which he would not have been injured, and appellee was authorized to introduce that testimony for the purpose of showing that he was exercising proper care at the time to avoid being injured, and that his injuries were received as a result of negligence of the engineer in checking the train without any warning to or signal from appellee, for he might have saved himself from injury, notwithstanding the engineer's negligence, had the brake rod, to which he had a right to hold to keep from falling, not been defective.

Appellant's counsel say that the court erred in permitting the life table read to the jury as evidence, and that, if wrong in that contention, that the court erred in not instructing the jury if they considered the tables to also consider the hazardous nature of appellee's employment as tending to determine the length of his life and the duration of his ability to labor. Such an instruc-

tion would have been erroneous as it would have singled out this particular fact in the testimony, and for the further reason that there was no testimony showing that appellee intended to always pursue the trade of a brakeman. He might have, and in all probability would, in course of time, sought other employment, but it would also have been error to have instructed the jury as to these probabilities. Of course, when the life tables are admitted as evidence and either party requests it, the court should at the time admonish the jury that they are admitted for the purpose only of showing the probable duration of life, and may be considered with all other testimony on that point. (L. & N. R. R. Co. v. Gordon, 24 Ky. Law Rep., 1819; I. C. R. R. Co. v. Houchins, &c., 121 Ky., 526; Stewart's Adm'x v. L. & N. R. R. Co., 125 S. W., 154, and L. & N. R. R. Co. v. McMillen, 119 S. W., 221.)

Appellant also contends that the lower court erred in the first instruction by submitting to the jury the negligence of the engineer in suddenly checking the engine without a signal from appellee, as appellee did not introduce any testimony showing that in doing so there was any unusual or unnecessary movement of the engine. The rule contended for, that before a brakeman can recover he must show that the movement of the train was sudden, unusual and unnecessary, can not apply to a case like the one at bar. Appellee had a right to assume that the engineer would perform his duty and not check the engine until he gave him the signal, therefore, as he had a right to rely upon the fidelity of the engineer, he could act with less caution than would have been incumbent upon him otherwise. (L. & N. R. R. Co. v. Barrickman, 31 Ky. Law Rep., 883.)

Appellant's main contention for reversal is the error of the lower court in giving the following instruction:

"If the jury believe from the evidence that the defendant failed to furnish the plaintiff with appliances which were known to the defendant, or should have been known to it by the exercise of ordinary care to be reasonably safe to be used by plaintiff in the discharge of the duties required to be performed by him, and such unsafe condition, if it was unsafe, was unknown to plaintiff and that by reason of such failure connected with or independent of the action of defendant detailed in the first instruction (if they believe from the evidence defendant so acted) and the plaintiff sustained injury

thereby, the law is for the plaintiff and the jury should so find.''

Appellant does not object to the form of this instruction, but contends that appellee's pleadings do not authorize it. This question has been ably presented by the briefs of the parties, and after a careful consideration we have determined that the petition does not state facts sufficient to authorize a recovery for any negligence in furnishing defective appliances. The petition stated in general terms that through the gross negligence and carelessness of defendant, its agents and servants, superior in authority to appellee, appellee was thrown upon the track of appellant and run over by several cars and the engine, etc. Under these general allegations, appellee could prove and recover for any gross negligence committed by positive act or for an omission of any act by any or all of appellant's agents in charge of the train upon which appellee was employed, who were superior in authority to appellee. This rule has been long established. See 2nd Chitty on Pleading, page 650; Chiles v. Drake, 2 Met. 146; L. & N. R. R. Co. v. Mitchell, 87 Ky., 332; Same v. Rains, 15 Ky. Law Rep., 423; Davis v. Ohio Valley Banking & Trust Company, 127 Ky., 800, and Gains v. Johnson, 32 Ky. Law Rep., 58, and the authorities therein cited. Counsel for appellee earnestly contend that under the general allegations of the petition, appellee should also be permitted to recover for the negligence of the master in failing to equip its cars with reasonably safe appliances. The court differs with counsel on this point. All the common law authorities and the decisions of this court agree that the general rule is that when a person sues the master to recover damages for injuries received by being put to labor in an unsafe place or with defective appliances, he must, to state a good cause of action, allege that he did not know that the place was unsafe or that the appliances were defective. See Wood on Master & Servant, page 791; Bogenschutz v. Smith, 84 Ky., 330; Pfisterer v. J. H. Peter & Co., 117 Ky., 501; Peter & Melcher Steam Stone Works v. Green, 25 Ky. Law Rep., 964; Willie v. East Tennessee Coal Co. 27 Ky. Law Rep., 335; Williams v. L. & N. R. R. Co., 111 Ky., 822, and Lexington & Carter County Mining Co. v. Stephens' Adm'r, 104 Ky., 502. In the case of Willie v. East Ten-

nessee Coal Co., supra, the court, discussing the subject of unsafe place to labor, said:

"In cases where a servant is suing his employer to recover for injuries sustained by reason of the negligence of the employer, it is incumbent upon the party injured to aver and show that he was not aware of the danger."

In the case of Williams v. L. & N. R. R. Co., supra, the court considered the same question and said:

"There is no allegation either in the original or in any of the amendments that appellant did not know of the existence, location, and alleged dangerous condition of the ash pit of which complaint is made. * * * In the absence of these necessary averments, we are of the opinion that the circuit judge did not err in the rulings complained of."

In that case Williams appealed from a judgment of the lower court sustaining a demurrer to his pleadings.

To sustain the position of appellee in the case at bar, would be in direct conflict to the authorities above cited, but appellee contends that a failure to sustain him will be in conflict with the authorities cited by him, heretofore referred to, and especially the case of Gains v. Johnson. In the case of Childs v. Drake, 2 Met., 149, appellee, Mrs. Drake, sued Childs alleging that he killed her husband by the negligent handling of a pistol which caused it to fire, and this was the only negligence complained of. In the case of L. C. & L. R. R. Co. v. Case's Adm'r, 9 Bush, 731, the petition alleged "that the intestate was killed by the employes of the railroad company carelessly and negligently causing a train of its cars to be run over him." It will be observed that the petition charged that the employes of the railroad company carelessly and negligently caused a train of cars to be run over deceased. It will be noticed that the last two cases cited were based upon a statute which permitted certain persons to sue in case of death by willful negligence, and for that reason the court held the allegations sufficient. It will be further observed that there was no testimony introduced of any defect in the train or road-bed, or that the deceased was put to work with defective appliances, and we are of the opinion that the court would not have allowed such testimony to be introduced under the allegations of the petition, unless there has been a charge of contributory negli-

gence against the plaintiff, but it would not then have been a proper subject to instruct upon.

The case of L. & N. R. R. Co. v. Wolf, 80 Ky., 83, has but little if any application to the question being considered, therefore we will not consume time in discussing it.

The case of L. & N. R. R. Co. v. Mitchell, 87 Ky., 327, was brought and decided upon the assumption that by reason of the negligence of those in charge of a train it ran over Mitchell and cut off one of his legs. There was no reference to the question under consideration. The same principal was involved in the case of L. & N. R. Co. v. Rains, 15 Ky. Law Rep., 423.

There is nothing said in the case of City of Owensboro v. York's Adm'r, 117 Ky., 301, upon the subject of pleading.

In the case of L. & N. R. R. Co. v. Dalton, 113 S. W., 843, it was held that a charge in general terms that injuries were due to the negligence and carelessness in managing, running and operating an engine and train of cars which resulted in injuries to appellee, stated a good cause of action. This is correct and does not militate against our conclusion in the case at bar. The same remarks will apply in the case of Davis v. Ohio Valley Banking & Trust Co., 127 Ky., 800.

The last case cited by appellee's counsel and which they contend is conclusive of their position, is Gains v. Johnson, 32 Ky. Law Rep., 58. We do not so construe the opinion. The petition in that case charged negligence in general terms, as was done in the case at bar, but it did not stop with the general allegation as did the petition in the case at bar. It undertook to explain what was meant by the general allegation, as follows:

"That defendant negligently failed to provide him a reasonably safe place in which to work or reasonably safe or proper machinery and appliances with which to carry on the work in which he was engaged at the time of said injury; that the place furnished him in which to work was unsafe and dangerous, and that the machinery and appliances furnished by the defendant and which he was using at the time were unsafe and dangerous, all of which was well known to the defendant and its officers and agents or could have been known to them by the exercise of ordinary care in time to have prevented the said injuries, but all of which was unknown to plaintiff."

In specifying what the negligence complained of was, that is that he was put in an unsafe place to labor and furnished defective appliances which were the cause of his injury, he explained his general allegation of gross negligence of the defendant, its agents and servants in charge of the distillery. The court decided in that case that Johnson was confined to the specific allegations of the failure of the company to furnish him a safe place in which to work and safe appliances, but did not determine that he could have recovered for such negligence under the general allegation of negligence recited in the first part of his petition. The petition as framed was founded upon the negligence of the company in failing to furnish him a safe place and safe appliances, a duty which it could not delegate to another, and when it assigned to another the duty of making the place and appliances safe, that person did not act as the agent of the company, but in place of and as the master, and in suing for injuries received by employes for negligence of the master in these respects it is necessary, in our opinion, that the petition, in substance, contains allegations similar to those copied above. The allegations were general; they did not nor was it necessary to state the particulars in which the place and appliances were unsafe.

As the case will have to be reversed for the above reason, we will consider an alleged error of the court in rejecting some testimony offered by appellee in rebuttal, and also the instructions. During the progress of the trial, appellant procured four persons in the vicinity of where appellee was injured and sent them, with an engine, tender and two empty gondola cars, to Pewee Valley to make a test as to whether or not a person standing between the empty cars could see the engineer when occupying his position on the engine. This was done to contradict the engineer, fireman and appellee with reference to that matter. It was not shown whether the tender sent with the test train carried any coal or not, nor, if it did, how high it was piled above the top of the tender. Appellee was introduced in rebuttal and asked about how the tender attached to the engine which injured him, was loaded; the court sustained objections to the question and an avowal was made to the effect that it was loaded to about three feet above the top thereof. This testimony was competent in rebuttal.

The court erred to the prejudice of appellee in the first instruction by confining his right to recover to the theory that he was performing the duty referred to by order of the conductor alone. The court should have added, ''or if he was performing labor at the time in line of his duty as head brakeman and the engineer knew that fact and that he was situated between the cars, the engineer was guilty of gross negligence when he suddenly checked the movement of the train without any warning to or knowledge on the part of appellee that he was going to do so.''

Instruction number two should not be given, unless the pleadings are reformed so as to authorize it. It will not be a misjoinder to allege the two causes for his injuries; one to recover for the gross negligence of the servants of the company superior in authority to appellee, and in the other for the ordinary negligence of appellant, the master, in failing to furnish safe appliances to appellee with which to labor.

The third instruction should be given as written, provided the petition is amended, with this addition, ''or the gross negligence of his superiors in charge of the train.'' If the petition is not amended that part of it with reference to safe appliances should be omitted.

Instructions numbers four and five properly define ordinary care and gross negligence, and number six correctly states the measure of damages.

At the instance of appellant, the court gave instructions A, B and C. These instructions were erroneous, but we deem it unnecessary to detail the reasons. What we have said in a general way in discussing the facts and law of the case, is sufficient to show the impropriety of giving them. These remarks also apply to instruction E which was offered by appellant and properly refused by the court.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.