## Nixon v. Raymond City Coal & Transportation Co.

Dec. 8, 1939.

Joseph C. Healy for appellant.

Robt. C. Simmons, August A. Rendigs, Jr., and Wm. H. Fry for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellant, Abram H. Nixon, at the time in controversy was employed by the appellee, the Raymond City Coal and Transportation Company, as a crane operator on a "digger," which is a boat operating on the Ohio river used largely in unloading coal from barges. The digger is equipped with a crane and bucket by means of which coal was being placed in a dump car and carried up the bank of the river on rails to a tipple. The dump car was drawn up the rails to the tipple by means of a cable operating through a pulley at the tipple, the power being furnished by an engine on the digger. The tipple, track and rails belonged to the Quality Coal Company, for whom the coal was being unloaded, and the track and rails ran from the tipple down the bank of the river to a point a short distance from the water. The digger "arms" were connected with the track and rails from the tipple. These arms were rails running from the digger, connecting with the rails from the tipple so as to make a continuation of the track from the tipple to the digger.

While a dump car loaded with coal was being pulled up the incline to the tipple, it left the rails at a point near the tipple. Appellant, upon being notified of this fact, undertook, with the assistance of other employees on the digger, to put the car back on the rails.

Appellant testified that about 30 days prior to the accident he notified the company's superintendent that the hook on the front end of the car with which the pulling cable was connected had been welded and was weak and that in using it there was danger of the rope jumping off the hook or that the hook might break and thus permit the loaded cars to roll back down the incline. He says that he explained to the superintendent a safety device that could be used in order to avoid accident *in case the cable or hook broke*. This safety device consisted of safety cables attached to the axle of the car to hold it should the pulling cable become detached from the car.

Appellant secured jacks from the digger to jack the car up and put it back on the rails. Before doing so, however, he secured a rope and tried to fasten the car *so it would not upset*. He describes the method used by him in securing the car in the following language:

"We run a strand of two-inch rope, two strands of rope through this ring (the ring in the end of the

cable connecting the cable with the pulling hook) and fasten the end to the cable and left long enough ends I could tie to the end of the iron chain and run it up this way over this hook and down into the pulling shank and try to put it through this bolt so it would not come loose. For some unknown reason it did come loose. I don't know how it done it.''

After the appellant had attempted to secure the car, he and other employees went to the back end of the car (the end toward the river) and started jacking it up, and while they were doing so the car upset, became detached from the cable and struck the appellant causing injuries to his person. This action was brought to recover for the injuries thus produced. At the conclusion of the appellant's evidence a peremptory instruction was given by the trial court and this appeal follows.

The petition alleged a failure on the part of the appellee to furnish safe appliances for work and sought a recovery under Section 33 of the Merchant Marine Act of 1920, 46 U. S. C. A., Section 688, or alternately under the common law of this state. The purpose of bringing the action under the Merchant Marine Act, known as the Jones Act, was to deprive the appellee of the defenses of contributory negligence and assumption of risk. It is urged for appellant that he was a seaman and that his action falls under the Jones Act. The appellee concedes that appellant was a seaman but insists that the injury occurred on land. There is no doubt that if the injury to a seaman takes place on land the Jones Act is inapplicable. State Industrial Commission of State of New York v. Nordenholt Corporation, 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Nogueira v. New York, N. H. & H. R. Company, 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754; Minnie v. Port Huron Terminal Company, 295 U. S. 647, 55 S. Ct. 884, 79 L. Ed. 1631.

It seems to us there can be little question that the appellant was injured on land. At the time he was injured he was on the track and rails of the Quality Coal Company near its tipple some 90 feet to 100 feet from the water's edge or, as expressed by one witness, 50 or 60 feet ''from the government line on the bank.''

Appellant relies on The Admiral Peoples, 295 U. S. 649, 55 S. Ct. 885, 886, 79 L. Ed. 1633, to bring the case under the Maritime Law. In that case the accident hap-

pened as the plaintiff, a passenger, was stepping from a gang plank to the dock. It was held that the Maritime Law was applicable, the court saying:

> "It was no less a part of the vessel because in its extension to the dock it projected over the land. Thus, while libelant was on the gangplank, she had not yet left the vessel. This was still true as she proceeded to the shore end of the plank."

We regard that case as having little bearing here, since it was pointed out that the plaintiff had not left the vessel.

In Esteves v. Lykes Brothers S. S. Company, 5 Cir., 74 F. (2d) 364, a seaman was standing on the dock painting the side of his ship. He was injured by a stick of lumber falling from a sling used in unloading the vessel. He sought recovery under the Jones Act. It was held the accident occurred on land and not on navigable waters and that the Jones Act was not controlling.

If the appellant had been injured on that portion of the track or rails called the "arms" the situation would be similar to that in The Admiral Peoples case where the injury occurred on the gang plank, an extension of the vessel over land, but since the accident occurred when the appellant was on property of the Quality Coal Company approximately 100 feet from the water's edge, it seems clear that the case is not controlled by the Jones Act.

Coming now to the merits of the case, it is extremely doubtful if any negligence on the part of the appellee is disclosed. Appellant states he notified the appellee that safety cables should be provided because the pulling hook had been welded and was weak and that the safety device was needed in case the hook broke. There is no evidence in the case that the hook did break. Apparently it continued to be sufficient for the ordinary operation of the car. It is true that one witness states that the car became derailed because of the absence of a bumper at one end, but the derailment did not cause appellant's injuries. His work at the time he was injured was to put the derailed car back on the track. The hook did not break or bend, as far as the evidence discloses. It seems rather that the car was upset and became detached from the cable as a result of the method adopted by appellant in attempting to put it back on the track.

He adopted his own means of making the car secure so that it would not upset and become detached from the cable while being jacked up and, as stated by him, "for some unknown reason it did come loose. I don't know how it done it." It appears more likely that the accident was caused by his own carelessness in jacking up the car rather than by any defect in the appliances furnished by appellee.

However, conceding arguendo that there was evidence of negligence in failing to furnish appellant safe appliances with which to work, he nevertheless knew of the defect in the appliances and fully appreciated the danger from such defect. He says he warned the superintendent that lack of safety appliances might cause the car to break loose. His testimony that he attempted to secure the car with the rope shows that he knew that the very thing that did happen was likely to happen and that the means used by him to prevent the accident were, apparently, wholly ineffective for the purpose, notwithstanding he was experienced in the business. It has been held many times by this court that the master's failure to furnish the servant a safe place in which to work or with safe appliances with which to perform his work does not create liability for injury if the servant knew that the place or appliances were not safe. In these circumstances he assumes the risk of injury. Steely v. Great Atlantic & Pacific Tea Company, 256 Ky. 586, 76 S. W. (2d) 900; Leatherwood Lumber Company v. Hall et al., 252 Ky. 119, 66 S. W. (2d) 76; Kirby v. Hillside Coal Company, 106 S. W. 278, 32 Ky. Law Rep. 519.

From the conclusions enunciated it is apparent that the trial court committed no error in directing a verdict in appellee's behalf.

Judgment affirmed.