## JUMP v. ASHLAND OIL CO.

## BECKHAM v. ASHLAND OIL CO.

Court of Appeals of Kentucky.
June 12, 1953.

Northcutt & Northcutt, Covington, Boehl, Stopher, Kilgarriff, Graves & Deindoerfer, Louisville, for appellant.

Orie S. Ware, Covington, for appellee.

DUNCAN, Justice.

These are appeals from judgments rendered upon directed verdicts for the appellee, Ashland Oil Company, denying recovery to the appellants, James Beckham and Arthur Jump, for personal injuries which they sustained on September 2, 1950,

as the result of an explosion at the Ashland Oil Company plant in Covington, Kentucky.

Appellants, Beckham and Jump, were employees of Wynn Brothers Construction Company, engaged by appellee as independent contractors to perform certain work, including the cleaning of gasoline storage tanks at appellee's Covington plant. On September 2, 1950, appellants were directed to clean storage tank number 313, and about 10:30 a. m., they went to the tank for that purpose. As a part of the cleaning out process, all gasoline is pumped from the tank and an electric pump owned by appellee had been connected to the tank on the previous afternoon for this purpose. The pump was running when appellants left work on the afternoon of September 1, and apparently ran all night since the gasoline in the tank had been reduced by the following morning from a level of 16 feet to 3 feet.

When appellants entered the concrete wall enclosure around the tank and pump; they found gasoline on the ground so deep in some places that they were required to lay boards across the pipes to walk around the area. Appellants testified that the electric pump was leaking gasoline by the side of the shaft and there were gaseous fumes in the air. A third man, Tom Wynn, was with them when they arrived at the tank, and they opened the lower manhole to ascertain the amount of gasoline still in the tank. It was determined that there was still some gasoline in the tank, and the manhole was replaced. About 11:45 a. m., and after Wynn had left the scene, the appellants were standing on a board between the pump and the tank when an explosion suddenly occurred, throwing Jump in one direction and Beckham in another. This was immediately followed by a second explosion, which was attributed to the gasoline in the tank itself. The immediate cause of the explosion is not shown, although appellants' offered testimony suggests the bare possibility that it was precipitated by a spark from the motor on the pump. However, we regard this as mere conjecture.

Appellants testified that the motor of the electric pump cut off and on some four or five times immediately prior to the explosion. Appellant, Jump, testified that some two or three weeks before the explosion he assisted in placing the electric motor and pump at tank 313; at which time he saw the electrician disconnect and reconnect the terminal box and that a broken gasket was used in the terminal box.

The petitions originally charged general negligence, in that the appellee, its agents and servants, carelessly and negligently caused the explosion. By subsequent amendments, specific negligence was alleged in failing to furnish the appellants a safe place in which to work and safe tools and appliances with which to work. The petitions, as amended, failed to charge that the appellants did not know or by the exercise of ordinary care could not have known that the place or tools were dangerous and unsafe. A general allegation of negligence would not have been sufficient to authorize recovery for a failure on the part of appellee to furnish the appellants a reasonably safe place in which to work or reasonably safe appliances. The issue as finally formed was, therefore, restricted to the specific negligence charged. Louisville & N. R. Co. v. Irby, 141 Ky. 145, 132 S.W. 393; Monroe v. Standard Sanitary Mfg. Co., 141 Ky. 549, 133 S.W. 214; Ohio Valley Coal & Mining Co. v. Heine, 159 Ky. 586, 167 S.W. 873; Jones Const. Co. v. Hendley, 224 Ky. 83, 5 S.W.2d 482.

Without exception, this Court has adhered to the rule that where a servant relies upon defective tools or appliances, or upon the failure of the employer to furnish a reasonably safe place in which to work, the servant must allege and prove a knowledge of the danger by the master and want of such knowledge by himself. Idol v. Louisville & N. R. Co., 203 Ky. 81, 261 S.W. 878; Gabbard v. Louisville & N. R. Co., 206 Ky. 474, 267 S.W. 558; Gibralter Coal Mining Co. v. Nalley, 214 Ky. 431, 283 S.W. 416; Brooks v. Arnett, 253 Ky. 491, 69 S.W.2d 1029. The precise question as to the requirement of a pleading where the action is not against the master does not seem to have been before us, but the analogy is inescapable. In the absence of an allegation that appellants did not know and by the exercise of ordinary care could not have

known of the unsafe condition of the premises or appliances, we do not think the petitions, as amended, were sufficient to support judgments against appellee.

▊ A motion for a peremptory instruction tests the sufficiency of the pleading as well as the evidence. Utterback's Adm'r v. Quick, 230 Ky. 333, 19 S.W.2d 980. Since the petitions were insufficient, the appellee's motion for a peremptory instruction was properly sustained.

▊ Aside from the question of pleading, we think the same result is inevitable under an application of the doctrine of assumed risk. The explosion occurred one hour and fifteen minutes after appellants went to tank 313 for the purpose of cleaning it. Immediately after their arrival, they observed that the pump was leaking and that gasoline in considerable quantities was on the ground surrounding the tank and gaseous fumes were in the air. Appellants testified that their knowledge of gasoline was limited to the fact that it was used as a fuel for automobiles and they were not aware of its dangerous qualities. Gasoline is a product of such common use and its dangers are so generally known that to say that a person of ordinary intelligence and experience is not aware of its explosive qualities is almost like saying that he does not know a fire will burn or a gun will shoot.

The term "assumption of risk" is generally associated with the law of master and servant, but its common meaning and general application are not restricted to actions by a servant against the master. Hotel Operating Co. v. Saunders' Adm'r, 283 Ky. 345, 141 S.W.2d 260; Adams' Adm'r v. Callis & Hughes, 253 Ky. 382, 69 S.W.2d 711. When we leave the realm of the master-servant relationship, it becomes difficult to distinguish assumed risk and contributory negligence, inasmuch as we can no longer say that the former is a matter of contract and the other a matter of conduct. The distinction is not material here, since either may be summarized by the statement in Poole v. Lutz & Schmidt, 273 Ky. 586, 117 S.W.2d 575, 576, that: "One who chances a risk or risks a chance and loses must suffer the consequences."

The dangers which an employee may incur fall into two classes: (1) the ordinary risks of the employment which are not created by negligence or breach of duty on the part of the employer; and (2) those risks which are created by the employer's negligence, or extraordinary risks. The courts of some States, not including Kentucky, have asserted without qualification that an employee does not assume the risk of the employer's negligence. 35 Am.Jur., page 725, section 301, Master and Servant. However, that extreme view is qualified by the exception that where the servant continues in the employment with knowledge of the employer's negligence, he is considered as having assumed the risk incident to such negligence. Texas & P. R. Co. v. Archibald, 170 U.S. 665, 18 S.Ct. 777, 42 L.Ed. 1188.

It would unduly lengthen this opinion to discuss separately the numerous opinions of this Court dealing with assumption of risk. It is sufficient to say that they have uniformly held that the failure of the master to furnish the servant a safe place in which to work or with safe appliances does not create a liability for injury if the servant knew of the unsafe condition of the place or tools. The general tenor of the opinions is illustrated by the following statement from Nixon v. Raymond City Coal & Transportation Co., 280 Ky. 743, 134 S.W.2d 633, 635:

"It has been held many times by this court that the master's failure to furnish the servant a safe place in which to work or with safe appliances with which to perform his work does not create liability for injury if the servant knew that the place or appliances were not safe. In these circumstances he assumes the risk of injury."

Our discussion of the pleading requirements and the doctrine of assumed risk has assumed without deciding that the evidence was sufficient to show that the explosion resulted from the failure of appellee to furnish the appellants a reasonably safe place or appliances. We doubt that the evidence, including that which was offered and excluded, is sufficient to establish that fact. At best, the cause of the explosion is highly

speculative. However, in view of the conclusions which we have expressed on other phases of the case, it is not necessary to discuss the evidence as to negligence or to consider other questions raised in appellants' brief concerning the competency of testimony which was offered and excluded.

The judgments are affirmed.