CASE 104—PETITION ORDINARY—MAY 31.

# Martin, Adm'r, &c., v. Louisville & Nashville Railroad Company.

### APPEAL FROM KENTON CIRCUIT COURT.

1. CONTRIBUTORY NEGLIGENCE. — A railroad brakeman, engaged in coupling and uncoupling cars in the yard of the company, is not guilty of contributory negligence in riding on a ladder on the side of a freight car in going from one point of work to another.

2. RAILROAD CARS LEFT STANDING ON ONE TRACK IN DANGEROUS PROXIMITY TO ANOTHER.—Where a track in the yard of a railroad company was reserved and kept clear for the use of another company, and the servants of the latter company left "dead" cars standing on the track in such close proximity to a track used by the former company as to come in contact with the body of a brakeman riding on the ladder of a car moving on that track, resulting in his death, the latter company is liable.

3. SAME.—The company in whose yard the cars were left standing is not liable, as the engineer of the train on which the brakeman was riding at the time of his death could not discover the danger by reason of the darkness, and the "dead" cars had not remained in their dangerous position such a length of time as to afford the yardmaster a reasonable opportunity of discovering the danger.

4. THE NEGLIGENT ENGINEER IS LIABLE DIRECTLY FOR HIS OWN NEGLIGENCE and can not escape responsibility upon the ground that he was acting merely as agent for another.

WM. GOEBEL FOR APPELLANT.

1. It was negligence to leave a car on a connecting track so close as not to admit of safe passage of a switchman stationed on ladder on side of car. And it was not contributory negligence for Smart to be upon the ladder. (L. & N. R. Co. v. Earl's Adm'rx, 94 Ky., 368; K. C., Memphis, &c., R. Co. v. Burton, 53 Am. & Eng. Railroad Cases, p. 115.)

    Therefore there must necessarily be a reversal as to the Chesapeake & Ohio Railway Company, and as to Robinson, its engineer, who placed the car on the track.

2. Robinson, the negligent engineer, is jointly liable, and may be jointly sued. (Shearman & Redfield on Negligence, sec. 244.)

3. The railway yard being that of the Louisville & Nashville Railroad Company, and the car which did the injury having been placed therein by its authority, the matter stands as if that corporation had itself placed the car where it was. Furthermore, it was the duty of that company to keep its tracks unobstructed and safe for its employes in the discharge of their duties. And in addition to this, it was the duty of the engineer on the train on which Smart was employed to discover the obstructing car and protect Smart from injury. (Cases cited above.)

J. W. BRYAN FOR APPELLEE, LOUISVILLE & NASHVILLE RAILROAD COMPANY.

No negligence whatever can be imputed to the Louisville & Nashville Railroad Company, and applying the law as declared in L. & N. R. Co. v. Earl's Adm'rx, 94 Ky., 368, there must be an affirmance as to that company.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellant's intestate, James Smart, was fatally injured while in the discharge of his duties as switchman in the yard of the appellee, the Louisville & Nashville Railroad Company, at Central Covington. By his petition the appellant seeks to recover damages for the death of Smart, because of the gross and wanton negligence of all of the appellees. By separate answers the material averments of the petition were denied and contributory negligence, on the part of Smart, pleaded. Upon the conclusion of the plaintiff's testimony the court peremp-

torily instructed the jury to find for the appellees, and this appeal questions the correctness of that instruction.

The proof conduces to show that on the night of September 14, 1892, Smart, as switchman in the service of the Louisville & Nashville road, was engaged with other employes of that road in making up trains—switching—in the company's yard, and had made a coupling on track No. 2 of the Louisville & Nashville, as shown in the following drawing:

He then signaled with his lantern to tne engineer in charge to move forward, and immediately climbed on a ladder on the side of the moving box-car to ride to a point further north, where other work awaited the crew. At a few minutes before this—not exceeding ten—the appellee, Robinson, in charge of a Chesapeake & Ohio train, which had been loaded with freight in Cincinnati to be delivered to the Louisville & Nashville people in their Covington yard, brought some twenty-five cars into the yard and "kicked" them in on track No. 1, which, though in the Louisville & Nashville yard, was reserved and kept clear for the use of the Chesapeake & Ohio road. Robinson then detached his locomotive and with it quit the yard. He left the "dead" cars, however, on track No. 1 in such close proximity to track No. 2 that the side or corner of the standing or "dead" car next to the switch was within a few inches of the line of passing cars on the other track. The space left was not sufficient to

admit of the safe passage of persons on the sides of cars running on track No. 2. The night was dark, and this dangerous proximity was not noticed by any of the crew on the Louisville & Nashville (or No. 2) track. Smart had ridden but a short distance when he was knocked off and fatally crushed.

The first question presenting itself, as it was upon the court's solution of this, we are told, that the peremptory instruction was based, is, was Smart guilty of such contributory negligence as but for it the injury would not have happened? Upon a similar state of case this court answered this question in the negative in the case of Louisville & Nashville Railroad Company v. Earl's Adm'rx, 94 Ky., 368, and a like conclusion was reached by the Alabama Supreme Court in Kansas City, &c., R. Co. v. Burton, 53 Amer. and Eng. Railroad Cases, 115, and we adhere to that determination.

It is a matter of common observation that railroad companies furnish cars of the class in use on the occasion under consideration supplied with ladders, or appliances similar to ladders, to enable employes to discharge promptly and efficiently the duties imposed on them. Among those duties is their rapid transit from one part of the yard to another. The most prudent and cautious employes use these ladders or steps for that purpose. That is what they are for, as well as for ascending and descending over the sides of the cars. As said in the Earl case, "the custom of brakemen riding on the ladder from one point of work to another was clearly established. This was the well-known way of doing such work as was before Earl on this occasion." Of course, the rule is different with a passenger. He has no need

to thus ride and may not so protrude his person beyond
the surface of the cars.    A brakeman, however, after he
has coupled or uncoupled certain cars, must oftentimes
follow up the moving train and, by his signals given from
the top or oftener from the sides of the cars, control the
engineer in further work of the same kind.    In going
about this ordinary work in the usual way, he has the
right to expect clear passage in his front.    While he may
not close his eyes to the perilous surroundings of his em-
ployment, he has the right to go about his ordinary work
with a consciousness of safety, and is not required to see
or look out for obstructions on the track.    This is im-
posed on the superintendency.    We conclude, therefore,
that the deceased was not guilty of negligence on the
night in question in riding on the appliances supplied for
that purpose.    We next inquire what act, if any, was the
negligent one, and where, that caused the injury?    We
may say in general that we do not doubt it to be the duty
of the engineer in charge to see as far as he may that the
track is clear of dangerous obstruction, by which we
mean obstruction dangerous not only from being im-
mediately on the track, but by reason of being dangerously
close to it.    Such, also, would seem to be the duty of the
yardmaster of the management in control of the yard.
But however alert we may demand these persons to be,
we can not require of them impossible or impracticable
things.    It is not even suggested that these officials had
aught to do with placing these cars on the switch, or had
any control of their movements; and we can not impute
negligence to an engineer if he fails to see in the dark.
Ordinarily, in cases of the kind we are considering, the
engineer himself is in control of the cars " kicked in " on

the connecting switch, and if he leave them dangerously near he is at once chargeable with negligence. But in the case at hand the obnoxious cars were not placed by him and he is without fault in the premises. So the yard-master of the owner can not during every minute of time see that those who bring cars upon the yard leave them in their precise and proper places. We do not doubt that if these " dead " cars had remained in their dangerous position such length of time as would have afforded the yardmaster a reasonable opportunity of discovering the danger, and he had failed to take steps to protect the workmen, negligence would be attributable to him and through him to his principal. Only a few minutes, how-ever, elapsed from the time of the lodgment of the cars on track No. 1 before the accident occurred, and we are not disposed to regard this agent as neglectful of his duties. The case, therefore, as it is presented against the Louisville & Nashville road, need not be considered further.

It follows, however, from the principles announced that the appellee, the Chesapeake & Ohio Railway Com-pany, through the wrongful act of its agent, Robinson, in the light at least of the proof as it has been presented by the plaintiff alone, was guilty of the negligence which caused the injury complained of. As said in the Earl case, " it was inexcusable negligence to leave the ' kicked in ' car so close to the main track that the engineer's cab could barely pass it." Whoever else may be held to ac-countability for failing to afford the workmen engaged about the cars the protection to which they are entitled, and we have seen that the engineer of the moving train and the yardmaster in the superintendency of the prem-

ises may be so liable under designated conditions, certainly the agent who actually places the cars in this dangerous position is guilty of negligence for which his principal is to be held accountable. While the proof is not as clear as it might be on the subject of who left the cars on the switch, the averments of the petition are that Robinson was the servant and agent of the defendant, the Chesapeake & Ohio Railway Company, and in control of its locomotive engine, and left the cars in the position described in the petition. This is not denied, as we construe the answer.

Of course the appellee, Robinson, is liable directly for his own negligence and can not escape responsibility on the contention that he was acting merely as agent for another.

The judgment is *affirmed* as to the Louisville & Nashville Railroad Company, and *reversed* as to the other appellees.