NUNN, C. J., concurs in this dissent.

---

CASE 31.—ACTION BY CHARLES A. HAHN'S ADMINISTRA-
TOR AGAINST THE LOUISVILLE & NASHVILLE
R. R. CO. AND ANOTHER.—November 9, 1909.

## L & N R R Co, &c v. Hahn's Adm'r

Appeal from Nelson Circuit Court.

GEORGE W. STONE, Special Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Master and Servant—Injury to Servant—Negligence—Evidence.—In an action for the death of a locomotive fireman, evidence held to support a finding that decedent was struck by a semaphore pole maintained at a point so close to the track as to be a source of great danger to trainmen, authorizing a recovery.

2.  Master and Servant—Injury to Servant—Assumption of Risk.—Where a railroad maintains obstructions near its tracks, it is liable for injuries occasioned by its neglect of duty, and a trainman knowing of them does not assume the risk.

3.  Master and Servant—Injury to Servant—Contributory Negligence.—Whether a locomotive fireman charged with the duty of keeping a lookout in front of the locomotive and to the rear of the train, who was struck by a semaphore pole near the track and killed was guilty of contributory negligence, held, under the evidence, for the jury.

JOHN S. KELLEY, TRABUE, DOOLAN & COX and BENJAMIN D. WARFIELD for appellants.

POINTS DISCUSSED AND AUTHORITIES CITED.

The trial court erred in refusing to peremptorily instruct the jury to find for appellants. Plaintiff's theory is that decedent, a fireman for the L. & N., was knocked from his engine, while in

motion, by a semaphore pole alongside of, and negligently close to, the track. But no one saw the accident. We are left wholly to conjecture as to where decedent was or what he was doing at the time he was hurt and as to the manner in which he received his injuries. The jury could not have done any more than guess as to whether he was struck by the pole, and defendants' rights should not be guessed away in behalf of one on whom the burden rests to establish a cause of action against them. Further more, they are not liable, even if decedent was struck by the pole, for the reason that it conclusively appears from the evidence that he had no duty to perform that required him to protrude any portion of himself beyond the engine, which it was necessary for him to do in order to be struck by the pole. If he was leaning out, it was for his own purposes, and not in furtherance of defendants' business. Again, even if it satisfactorily appeared from the evidence that decedent was struck by the pole while discharging a duty which made it necessary for him to assume a position of danger, still defendants would not be liable. The semaphore pole was absolutely necessary for the safety of employes and passengers of certain cars which used the elevated tracks where the accident occurred, and was properly placed to serve its purpose. Therefore, its construction and maintenance in that position was not negligence in defendants. The court erred in admitting incompetent evidence for plaintiff and in rejecting competent evidence offered by defendants. And also erred in instructing the jury on plaintiff's motion and in refusing instructions asked by defendants.

## AUTHORITIES CITED.

Wintuska's Adm'r v. L. & N. R. R. Co., 14 R., 579; Caldwell's Notes to Kentucky Reports, Vol. 2, p. 1522; L. & N. R. Co. v. McGary's Adm'r, 104 Ky. 509; Hughes v. Cincinnati, etc., R. Co., 91 Ky. 526; L. & N. R. Co., v. Scalf, 110 S. W., 862; L. & N. R. R. v. Milliken's Adm'r, 21 R., 489; Randall v. B. & O. R. Co., 109 U.S., 478; Tuttle v. D. G. H. & M. Ry., 120 U. S., 189; 4 Thompson's Commentaries on the Law of Negligence, Secs. 4755, 4756; Scidmore v. M. L. S. & W. Ry. C., 61 N. W., 765, 89 Wis., 188; Thain v. Old Colony R. Co., 161 Mass., 353, 37 N. E. 309; Pennsylvania Co. v. Finney, 42 N. E. 816 (Ind.); Wilson v. L. S. & M. S. Ry. Co., 108 N. W., 1021 (Mich.); Mize v. L. & N. R. Co., 127 Ky. 496; L. & N. R. Co. v. Daniel, 122 Ky., 256; Schlaff v. L. & N. R. Co., 14 Sou., 105 (Ala.); L. & N. R. Co. v. Hall, 87 Ala., 708, 4 L. R. A., 710; Hughes v. General Electric Light & Power Co., 107 Ky., 485; Mayer v. Building Co., 116 Ala., 634; 22 Sou., 859; Martinez v. Planel, 36 Cal., 578; Hudson v. Railroad Co., 59 Ia.,

L. & N. R. R. Co., &c. v. Hahn's Admr.

581, 13 N. W., 735; Hubbard v. Railroad Co., 39 Me., 506; Parker v. Publishing Co., 69 Me., 173; Branch v. Libbey, 78 Me., 321; Wise v. Ackerman, 76 Md., 375, 390, 25 Atl., 424; Collins v. Dorchester, 6 Cush., 396; Bridger v. Railroad Co., 27 S. C., 456, 3 S. E., 860; Snowden v. Coal Co., 16 Utah, 366, 52 Pac., 599; Phillips v. Willow, 70 Wis., 6, 34 N. W., 731; Barrett v. Hammond, 87 Wis., 654, 657, 58 N. W., 1053; Kreider v. W. R. P. & P. R. Co., 110 Wis., 645, 86 N. W., 662; L. & N. R. Co. v. Mulloy's Adm'r, 122 Ky., on pp. 235-6; C., N. O. & T. P. Ry. Co. v. Zachary's Adm'r, 32 R,678, 680.

NAT HALSTEAD for appellee.

CHARLES OGDEN, D. A. McCANDLESS and F. E. DAUGHERTY of counsel.

### AUTHORITIES CITED.

Shoulder's Domestic Relations, Sec. 230; Civ. Code, Sec. 73; L. & N. R. R. Co. v. Hoskin's Adm'r, 32 Ky. Law Rep., p. 1263; I. C. R. R. Co. v. Smith's Adm'r, 27 Ky. Law Rep., 598; Turner's Adm'r v. L. & N. R. R. Co., 23 Ky., p. 340; L. & N. R. R. Co. v. Gilliam's Adm'r, 24 Ky. Law Rep., p. 1536; Sherill v. C. & O., S. W., 11 Ky., p. 502 and 89 Ky., 302; Home Tel. Co. v. Beeler's Adm'x, 31 Ky., p. 19; Elliott on Railroads, 2nd edition, vol. 1, Sec. 477; Vol. 1, Sherman & Redfield on Law of Negligence, 5th Edition, Sec. 225; Shulte v. L. & N. R. R. Co., &c., 31 Ky., p. 34; C. & O. R. R. Co. v. Osborne, 97 Ky., p. 112; L., H. & St. Louis R. Co., v. I. C. R. R.Co., 29 Ky., p. 265; L, H. & St. Louis R. Co. v. Kessee, 31 Ky., p. 617; Clinger's Adm'r v. Chesapeake & Ohio, of Ky., &c., 33 Ky., 88; Pugh v. C. & O. R. R. Co., 101, Ky., p. 77; L. & N. R. R. Co. v.Gilmore's Adm'r, 33 Ky., p. 76; L. & N. R. R. Co. v. Creighton, &c., 106 Ky., p. 42; Finley v. Louisville Railway Co, 31 Ky., p. 743; Derby's Adm'r v. Ky. Central R. R. Co., 9 Ky., p. 153; Houston Ry. Co. v. Oran, 49 Texas, p. 341; Cincinnati, &c., R. R. Co. v. Sampson's Adm'r., 16 Ky., p. 819, and 97 Ky., p. 65; Chicago, &c., R. R. Co., v. Johnson, 116 Ill., 206; Cincinnati R. R. Co., v. Sampson's Adm'r, 97, Ky., p. 73; Hugh's Adm'r v. L. & N. R. R. Co., 104 Ky., p. 774, and 32 Ky., p. 13, 14.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

This action was instituted in the Nelson circuit court by W. G. Hahn, as administrator of Charles A. Hahn, deceased, against the Louisville & Nashville

Railroad Company, the Illinois Central Railroad
Company, and the Kentucky & Indiana Bridge & Rail-
road Company to recover damages for the destruc-
tion of the life of Charles A. Hahn.  The trial court
gave a peremptory instruction in favor of the Ken-
tucky & Indiana Bridge & Railroad Company.  The
jury returned a verdict against the Louisville & Nash-
ville Railroad Company and the Illinois Central Rail-
road Company for the sum of $5,000.  From the
judgment based thereon, this appeal is prosecuted.

While several alleged errors are assigned as
grounds for reversal, counsel for appellants
state in their brief that they do not care
to have the judgment reversed unless this
court shall hold that plaintiff made no case
to submit to the jury, and that the trial court
erred in refusing to award appellants a peremptory
instruction.  We shall therefore discuss the case from
the standpoint of the question thus presented.  Dece-
dent, Charles A. Hahn, at the time of his death was
in the employ of the Louisville & Nashville Railroad
Company and engaged in the capacity of locomotive
fireman.  The accident occurred on the south track of
the Short Route Railway in the city of Louisville.
The railway referred to extends from near Floyd
street to Thirteenth street, in the city of Louisville.
It consists of a double track and passes over a trestle
commencing at Floyd and First streets.  The grade
between Floyd and First streets is very steep.  Lo-
cated about 120 feet west of Floyd street is a sema-
phore pole which was used for signal purposes for the
benefit of all the trains of the different companies
using the Short Route Railway track.  The Short
Route Railway was maintained, controlled, managed,
and operated by the Illinois Central Railroad Com-

pany as a part of its sysem, under and by virtue of a lease for a period of 99 years. The Louisville & Nashville Railroad Co. had for a long time prior to the death of the decedent been using the Short Route Railway track daily for the purpose of passing its trains over it, and was so using the track on the occasion of the accident. On the day the decedent was killed the Louisville & Nashville Railroad Company was taking a train consisting of 32 cars to the Big Four Railroad. This train was in charge of two engines. The Louisville & Nashville engine was in front, while the Big Four engine was in the rear. At the time of the accident, the train was passing over the south track of the Short Route Railway. The Louisville & Nashville engine was backing. The decedent was thus placed on the side next to the semaphore. The negligence charged is that the defendants suffered and permitted the semaphore pole to be and remain so close and in such dangerous proximity to the track of said Short Route Railway, over which the engine on which the decedent was fireman was passing, as to render same unsafe and dangerous to the decedent in the discharge of his duties as such fireman, and dangerous and unsafe to the employes of the company in operating trains along and over said track. When decedent was last seen he was in the engine at Jackson street. He then had a conversation with the engineer, O'Hern, who told him to have his fire hot as it was a heavy pull up that hill. Some time after passing the semaphore pole, decedent was missing. His body was afterwards found some 30 or 40 feet west of the pole. An examination of the pole showed that there was a fresh mark on it at about the height of a man's head seated in the engine cab or standing in the gangway. Decedent's cap was found

at the foot of the pole. A portion of his brain was also found about five feet from the pole. There was no blood or clothing found upon the wheels of the engine. Blood was found upon the wheels of the other cars beginning with the car next to the engine. The top of decedent's head was knocked off. One of his hands was found about 12 feet west of the semaphore pole. His body was cut in two. Blood and flesh were found strung along the track from about 12 feet west of the semaphore pole, where the body was found, a distance of 30 or 40 feet.

The accident occurred on July 4, 1907. It took place about 4:15 a. m. While the evidence for appellants is to the effect that it was then broad daylight, the evidence for appellee is that it was barely day, and the morning being a hazy one, it was necessary in signaling to use lighted lanterns. According to appellee's testimony, the semaphore pole was located at a point from 14 to 18 inches distant from a passing engine or car. The position of the pole was such as to be a source of danger to the men operating the trains. According to the evidence for appellants, the pole was some distance further from a passing engine or car, and it was necessary that it should be placed at that point. It was a permanent structure, and had been there during all the time that decedent was in the employ of the Louisville & Nashville Railroad Company, a period of eight or nine months. While appellants' witnesses testify that it was necessary that the semaphore pole be located at the point where it was located, the witnesses for appellee say that it should have been placed upon the side of the tracks at a point where its presence would not be dangerous to trainmen, and in this position it would have been just as serviceable for the purposes required. It was.

shown by various witnesses that it was decedent's
duty while not engaged in the actual act of firing, to
assist the engineer to keep a lookout.  To this end it
was necessary for him, not only to look in the direc-
tion in which the train was moving so as to avoid com-
ing in contact with people or objects on the track, but
also to look to the rear of the train in order to take
signals from brakemen.   On the other hand, there
was testimony to the effect that at the particular time
the decedent was killed the engineer could see the
head brakeman and take all the necessary signals
from him.

It is first insisted by appellants that, under the
facts of this case, the jury could do nothing more than
guess; that there was no evidence tending to show
that decedent was actually struck by the semaphore
pole; that he might have fallen out of the engine and
the same result followed.   While it is true that no
one saw the accident, and that whatever conclusion is
reached in regard to the cause of the accident is de-
ducible only from the circumstances, in our opinion,
all the facts point unerringly to the conclusion that
decedent was struck by the semaphore pole.   It is
altogether improbable that  a  fall from an engine
would have knocked off a portion of decedent's skull.
The presence of his cap at the semaphore pole, the
fact that the pole was marked at a place where his
head would likely come in contact with it, the charac-
ter of the blow on the head, and the further fact that
a portion of his brains were found at that particular
point, when considered in connection with the improb-
ability of his death having occurred in any other way,
removed the case from the field of speculation, and
were sufficient to authorize the finding of the jury

that the decedent's head was actually struck by the pole.

But it is insisted that decedent in projecting his head from the engine was acting solely for himself, and not in the performance of any duty in the capac· ity of fireman. The proof, however, shows that it was the decedent's duty, not only to look in ·front of the engine, but to the rear of the train. If it was a hazy morning, as some of the witnesses tes- ·tify, 'it is certainly true that decedent could get a better view, not only of the track, but of the train, by projecting his head out of the engine. Where it is the duty of the fireman to keep a lookout, we will not say that it is negligence upon his part to attempt to perform this duty in a manner that will render it most effective. Nor can we say he was acting merely for his own convenience when his purpose was to serve his master in a most commendable way.

Lastly, it is insisted that the semaphore pole was a ·permanent structure and necessary for the operation of trains; that the decedent had passed it daily for several months, and he must assume the risk of being injured thereby. In support of this conclusion, we are cited to 4 Thompson's Commentaries on the Law of Negligence, Sec. 4755. It is undoubtedly true that this doctrine has been recognized in certain jurisdic- tions, but it is not the law of this state. Thus in the case of Cincinnati, etc., R. Co. v. Sampson's Adm'r, 97 Ky. 65, 30 S. W. 12, 16 R. 819; this court used the following language: "It is contended that this bridge has been constructed for many years, and, no employe having been injured or killed by reason of its con- struction, it must be assumed that it is such a struc- ture as is reasonably safe for its employes. We can- not adopt this view of counsel, but, on the contrary,

it is plain from the record before us that this over-
head structure was in no such condition as enabled
this employe to discharge the duty he owed the com-
pany, and at the same time however careful, protect
himself from the danger impending by reason of the
unsafe condition of the bridge.  The employe assumes
the ordinary risks pertaining to an employment that
is often and necessarily attended with much danger,
but this does not exempt the railroad company from
liability when reasonable precaution on its part would
save its employes from harm, and in a case like this
where the exercise of the slightest care would have
prevented the accident.  There can be and has been
no reason assigned in this case why a corporation
with the means to construct a railway would in the
construction of all or large bridges leave them in
such condition as involves its employes, brakemen, in
imminent peril when passing through them, when
with a small expenditure such structures in this re-
gard could be made perfectly safe.  We are aware of
many reported cases, some of which have been re-
ferred to by counsel, where the absence of ordi-
nary care and the means of knowing the condition of
the bridge by the employes have been held as reliev-
ing the railway company from responsibility in such
cases.  This court, however, has not followed or ap-
proved those decisions in reference to such struc-
tures, but, on the contrary, in the case of Derby's
Admr. v. Kentucky Central Railroad Company, 9 Ky.
Law Rep. 153, 4 S. W. 303, plainly intimated that if
the intestate in that case had been required to be on
top of the car as it passed through the structure in
dischage of his duty, and was killed by reason of its
being too low for the cars to pass under, the brake-
man, standing erect upon them, a recovery would
have followed."

In the case of Finley v. Louisville Ry. Co., 31 Ky. Law Rep. 740, 103 S. W. 343, this court said: "We are unable to percieve any difference in the the principles governing the liability of the master for injuries to a servant caused by an obstruction overhead and one caused by an obstruction at the side or any other place."In the same connection the court uses the following language: "From these authorities it is perfectly manifest that the rule in the state of Kentucky is that the master is required to furnish the servant a reasonably safe place to work; and unless it is in the line of the servant's duty, he is not required to make an inspection of the place of work to discover the defects and the danger incident thereto; and he is not precluded from recovering of the master when he is injured by defects or dangerous obstructions, unless he knows of them or they are patent to persons of his experience and understanding." In 26 Cyc. 1130, the rule is thus stated: "A railway company is bound to exercise reasonable care and diligence to prevent obstructions or erections on or over or near its tracks which are a source of danger to its servants, and will be held liable for injuries occasioned by its neglect of duty." Many cases are there cited to support the doctrine of the text.

Under the facts of this case, there can be no doubt that the presence of the semaphore pole at the point where it was located was a source of great danger to men operating the trains along the Short Route Railway. We cannot say as a matter of law that decedent was guilty of contributory negligence in projecting his head for the purpose of keeping a lookout at a time when it would come in contact with the semaphore pole. That was a question for the jury.

We therefore conclude that the court did not err in refusing appellants a peremptory instruction.
Judgment affirmed.