## Louisville & Interurban Railroad Company v. Hardin's Admr.

(Decided June 6, 1913.)

### Appeal from Oldham Circuit Court.

1. Evidence—Action Against Railroad for Death—Manner of Death May Be Established by Circumstances—Negligence.—Although no witness saw the deceased when he was killed, the fact that he was killed in a certain way may be established by circumstances as fully as by direct testimony.

2. Instructions—Contributory Negligence.—It is unnecessary that in the first instruction anything should be said as to contributory negligence, when in another instruction the jury is told that although the defendant was negligent as set out in No. 1, there could be no recovery if the deceased was guilty of contributory negligence but for which he would not have been injured.

3. Railroads—Electric Railroad—Injury to Conductor—When Not Required to Anticipate Presence of Pole.—A conductor upon an electric line is not required to anticipate that a pole has been set so close to the track as to endanger him in the ordinary discharge of his duties and he does not assume the risk unless he knows the dangerous proximity of the pole.

WILLIS, TODD & BOND and A. P. HUMPHREY for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

William H. Hardin was a conductor on one of the cars of the Louisville & Interurban Railroad Company be-

tween Louisville and LaGrange. While acting as conductor he was killed near Pewee Valley, and this action was brought by his personal representative to recover for his death on the ground that the company had negligently placed one of its poles too close to the track and that in the discharge of his duties Hardin had been struck by this pole and killed. By its answer the defendant denied the allegations of the petition, and pleaded contributory negligence on the part of the deceased. On a trial of the case there was a verdict and judgment for the plaintiff in the sum of $5,000. The railroad company appeals.

According to the evidence for the plaintiff as the cars approached the station at Pewee Valley, it was customary for the conductors to change the trolley from one wire to another for the purpose of enabling the east bound car to pass the west bound car at that station; and it was customary for the conductors in doing this while the cars were approaching the station to go around the bumper at the rear end of the car and stand on the bumper and adjust the trolley. The bumper of the car was so constructed that the conductor could step from the platform on a portion of it, and thence using the handholds proceed to that portion of the bumper immediately underneath the rear windows, and while standing upon this part of the bumper, which was from ten to twelve inches wide adjust the trolley while holding to the handholds. The pole in question stood thirty-eight inches from the nearest rail of the track. The car extended over the rail nineteen inches. This would leave only about nineteen inches between the pole and the side of the car as it passed. The accident occurred about six thirty p. m. on August 18, 1911. As the car approached Pewee Valley there were a number of people standing on the rear platform. Clarence Netherton testified that he saw Hardin go inside and get his gloves, and put them on. These gloves were used when they were going to change the trolley; that he then came out on the back platform, and went around to the right, and this was the last he saw of him. Norman Blackley testified that he was sitting on the steps of the car on the right hand side; that the rear platform was filled with passengers; that while he was sitting on the steps and as the car was approaching Pewee Valley, Hardin touched him on the shoulder indicating that he wished him to arise; that he arose and moved out of the way, and he then saw Hardin step down

upon the first step of the car and take hold of the hand hold nearest the platform; that he then turned away and heard a noise that attracted his attention, and on looking back saw Hardin flash behind the hind end of the car with his face down. J. H. Bowling was sitting in the car and his attention was attracted by a jar against the car and the lights twinkling above the globe. The car suddenly stopped. He and P. S. Head got off the car and went to the place where the body of Hardin lay, and from this point they went to the pole. On the painted portion of the pole about an arm's length above his head, he saw a blur on the paint, and noticed that the projections of wood made by the spikes of the linemen in climbing the pole, had been knocked off and appeared to have been freshly broken. P. S. Head testified that there was a noise like a bump; then there was a general outcry. He got off the car after it stopped, and ran back to where the man was lying. He found the body about twelve feet from the pole; he testified to the same facts as Bowling as to the signs on the pole. The physician who examined Hardin testified that he had received a severe blow on the back of the head at the base of the skull. There was a fracture at the base of the skull about the hair line. Either his neck was broken or the base of the skull.

It is insisted for the appellant that this evidence does not show that Hardin was struck and killed by the pole and that on this evidence it is equally probable that he fell from the car and was killed in this way without striking the pole. But it will be observed that he went in the car to get his gloves which were commonly used by the conductors while adjusting the trolley; that he came out of the car and had Blackley to get up from the steps on the south side of the car; that he was next seen with his hand upon the handhold nearest the platform at the south side of the car, and that none of the witnesses saw him after this; that next came a bump and a violent shaking of the car, and that just after this Hardin's body suddenly flashed out behind the car, and when he was reached he had received a heavy blow at the back of the head which broke his neck or fractured the skull; and there was practically no other injury upon him except some cratches on his face received when he fell on his face. It is evident he passed out of view of the witnesses because he passed around the corner of the car and just after this came the thud or bump. If he was standing on the bumper holding to the handhold with one hand and

trying to adjust the trolley with the other, he would naturally have his eyes to the rear so that he could see the trolley which he was trying to adjust and this would throw the back of his head toward the pole; his head would naturally be thrown outward in the effort to see the trolley and adjust it. While it is true no witness saw him strike the pole the circumstances are fully as convincing as any positive testimony could be; for there is nothing else in the record to account for the bump, the jar of the car or the twinkle of the lights.

It is true that on behalf of the defendant a number of witnesses were introduced who testified that Hardin's body was found from twenty to forty feet east of the pole. But we do not regard this fact as entitled to much weight for the reason that being a stout young man, having his hand gripped tightly upon the handhold when the car was running rapidly, he would not unreasonably be carried some feet beyond the pole before his grip upon the handhold relaxed. We, therefore, conclude that not only there was some evidence that Hardin was struck and killed by the pole but that the weight of the evidence sustains the verdict of the jury.

It is complained that in the first instruction, the court did not say anything about contributory negligence; but while this is true, the court by another instruction, told the jury that although they might believe from the evidence that the defendant was guilty of negligence as set out in instruction 1, yet if they further believed from the evidence that the deceased failed to use ordinary care for his own safety, and but for this would not have been hurt, they should find for the defendant. The instructions of the court are to be read together, and when the court expressly referred in this instruction to No. 1, the jury could not have failed to understand the meaning of the two instructions.

Lastly, the appellant complains that the following instruction asked by it was refused:

"If the jury believe from the evidence that the deceased knew of the proximity of said pole or if it was patent to persons of his experience and understanding, they should find for the defendant."

If this instruction had been given it would have been under the evidence misleading. It was not incumbent on the deceased to anticipate that a pole had been placed so near the track as to endanger him in the proper and usual discharge of his duties, and he was not required to be on

the lookout for such a pole. He had a right to presume that he could safely discharge his duties in the ordinary way unless he knew of the danger. The fact was, however, the pole was there and it was patent to a person of his experience and understanding if he had looked. He did not look because he did not realize the danger, and as the car approached the pole had his back to it with his eyes on the trolley. The instruction was, therefore, properly refused, and without going into the details of the evidence we deem it sufficient to say that if a proper instruction on the subject had been given it would have had no effect on the result of the trial. The defendant was clearly negligent in maintaining its pole so close to the track, and to exempt it from responsibility on the ground that the deceased assumed the risk, it should appear that he knew of the proximity of the pole and that the danger from it was patent to a person of his experience and understanding. There was much in the evidence for the defendant to the effect that the deceased was negligent in going outside of his car while in motion to change the trolley; but this issue was fairly submitted to the jury by the instructions of the court, and on the whole record we conclude that the appellant had a fair trial on the merits of its case.

Judgment affirmed.