## Louisville & Nashville Railroad Company v. Lewis.

(Decided October 20, 1925.)

### Appeal from Lee Circuit Court.

1.  Master and Servant—Petition Held to Charge Railroad's Knowledge of Unsafe Place.—A petition charging defendant railroad company with negligently operating one of its cars on which plaintiff was switchman so close to top of shed alongside right of way, and to have so negligently constructed and maintained its tracks in proximity to shed that while engaged in performance of his duty plaintiff was knocked from car and injured, held sufficiently to charge defendant's knowledge of unsafe condition of place.

2.  Master and Servant—Injured Employe Must Allege Absence of Knowledge of Unsafe Place.—Employe, injured while working in unsafe place, or with defective appliances, must, as condition to recovery from master, allege absence of knowledge that place was unsafe, or appliances defective.

3.  Master and Servant—Master's Failure to Furnish Safe Place is Particular Cause of Action, which Must be Pleaded to Authorize Evidence and Instruction on Question.—Cause of action arising out of master's failure to furnish servant safe place to work is a particular cause of action, and must be pleaded in order to authorize introduction of evidence of, or submission of instruction on, unsafe place, and neither evidence of failure to furnish a safe place nor an instruction on that question is authorized under a general plea of negligence.

4.  Master and Servant—Petition Held Defective in Failing to Allege Plaintiff's Absence of Knowledge of Unsafe Condition.—Petition seeking recovery for injuries in unsafe place of work held defective in failing to allege plaintiff's absence of knowledge of unsafe

condition or inability by exercise of reasonable care to have known it.

5. Pleading—Evidence and Judgment Held to Cure Defect in Petition for Injuries in Unsafe Place of Work.—In action by employe against railroad company for injuries sustained in unsafe place of work, evidence and judgment for plaintiff held to have cured petition, defective in failing to allege absence of knowledge of plaintiff that place of work was unsafe, or that he could not have known of the unsafe condition by the exercise of reasonable care.

6. Master and Servant—Whether Switchman was Knocked from Freight Car by Roof of Shed Held for Jury.—Whether switchman was knocked from freight car by roof of shed in close proximity to track, or whether his fall was caused in some other way, held for jury.

7. Master and Servant—Master Entitled to Peremptory Instruction, Regardless of Plea of Assumed Risk.—When injury has resulted to an employe from no negligence of defendant master, the injury must be held to be either the result of the ordinary risks of the employment, which the servant assumed on accepting it, or of his own negligence, and in either of such cases the master is entitled to a peremptory instruction, regardless of whether he interposed plea of assumed risk.

8. Master and Servant—Trainmen May Assume Working Place is Safe.—Trainmen may assume, while discharging their duties on moving trains in the usual and customary manner, that the place they are working at or about is safe, and they are not required to be on the lookout for obstructions along the right of way that may injure them.

9. Railroads—Switchman Held Not to have Assumed Risk of Injury by Shed Near Track.—Switchman held not to have assumed risk of injury arising from being knocked off freight car by roof of shed in close proximity to track.

10. Damages—Verdict for Permanent Injuries Must be Supported by Positive and Satisfactory Evidence.—Verdict for personal injuries, which is so large that it is sustainable only if the injuries are permanent, must be supported by positive and satisfactory evidence of permanency.

11. Damages—$25,000.00 for Switchman's Injuries Held Excessive.—In action by switchman against railroad company for injuries to back, received in fall from car, resulting in various and severe pains, but concerning the permanency of which there was much uncertainty, verdict of $25,000.00 held excessive, as reflecting passion or prejudice of jury, not based on the evidence.

HUNT, NORTHCUTT & BUSH, ROSE & STAMPER and WOODWARD, WARFIELD & DAWSON for appellant.

J. MOTT McDANIEL, FRED P. CALDWELL, LESLIE W. MORRIS, D. L. HAZELRIGG and POLK SOUTH, JR., for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellee recovered judgment for $25,000.00 in the
Lee circuit court in an action against appellant for in-
juries alleged to have been received by him as a result of
its negligence while employed by it as switchman in its
railroad yards at Hazard, Kentucky. The appeal has
been prosecuted to reverse that judgment, and numerous
grounds are urged upon this court as reasons for so
doing. Eight different briefs have been filed setting
forth the contentions of the respective parties. Some
of them are of large volume, others not so large, but in
view of the great length to which this case has been
briefed by either side, the court feels that in order to
limit this opinion to a reasonable length, it will not be
necessary to follow the various arguments made to the
length they have gone. The opinion will be confined to
what the court deems the salient points in the case.

It is insisted for appellant that the petition does not
state a cause of action and that a peremptory instruction
should have been given for appellant for that reason.
Appellee's right to recover in this case was predicated
upon appellant's negligent failure to furnish him a rea-
sonably safe place to work. Appellant insists that the
petition is defective in that it does not allege that appel-
lant knew of the unsafety or by the exercise of ordinary
care should have known of it. We find the petition to
charge appellant with so negligently operating one of its
cars upon which appellee was engaged in service as a
switchman so close to the top of a shed standing along-
side the right of way and to have so negligently con-
structed and maintained its tracks in proximity to the
shed that while engaged in its service in the performance
of his duty he was knocked from the car and injured. The
court is of the opinion that those allegations of the peti-
tion sufficiently charge appellant's knowledge of the un-
safe condition of the place. Appellant could not con-
struct its tracks close enough to a building standing
alongside its right of way to be unsafe for trainmen en-
gaged in its service without knowledge of that fact.

It is further insisted for appellant that the petition
was defective in that it did not plead that appellee did
not know and could not by the exercise of reasonable
care have known of the unsafe condition of the place fur-
nished him to work. Under the general rule on the sub-

ject appellant's position as to this question would seem to be well taken. The general rule, supported by numerous opinions of this court, is that when a person sues the master to recover damages for injuries received by being put to labor in an unsafe place or with defective appliances, he must, to state a good cause of action, allege that he did not know that the place was unsafe or that the appliances were defective. L. & N. Railroad Company v. Irby, 141 Ky. 145, 132 S. W. 393, and cases there cited. See also Raikes v. Payne, Director General, 198 Ky. 820, and Idol v. L. & N. R. Company, 203 Ky. 81. Under that rule, as was particularly pointed out in the Irby case, *supra*, in case the petition contains merely a general charge of negligence, evidence of unsafe place or defective appliances may not be introduced for the servant except to rebut evidence of contributory negligence, and it is error to instruct either as to unsafe place or defective appliances. The reason is that under a general charge of negligence the cause of action is predicated upon negligence committed by positive act or omission to act by the master or any or all of his agents. In other words, a cause of action arising out of the master's failure to furnish the servant a safe place to work is a particular cause of action and must be pleaded in order to authorize the introduction of evidence of or the submission of an instruction on unsafe place, and neither evidence of failure to furnish a safe place nor an instruction on that question is authorized under a general plea of negligence.

It appears that the petition herein is not predicated upon a general charge of negligence but is appellee's efforts to state a cause of action against appellant for negligently failing to furnish him a safe place to work. Tested by demurrer the petition is defective in that it does not allege that the appellee did not know of the unsafe condition or by the exercise of reasonable care could have known of it. No demurrer was interposed, however, and its allegations were denied by answer. The case then went to trial under the petition, defective in the respects pointed out, but which unmistakably was an attempt to state a cause of action against appellant for failure to furnish appellee a safe place to work. The testimony for appellant and appellee was developed fully as to all the elements necessarily embraced within a cause of action predicated upon the master's failure to furnish the servant a safe place to work. The evidence for appellee, as will more fully appear hereinafter, was sufficient

to have entitled him to go to the jury under a properly pleaded cause of action. The instruction submitted the essential element omitted from the petition. The court then is clearly of the opinion that this presents a state of case in which the proof and judgment cured the defect in the petition.

In McKinney Deposit Bank v. Cyrus W. Scott Manufacturing Company, 207 Ky. 340, the latest utterance of this court on the question, the following from Stevens on Pleading, page 148, was approved as the rule:

"Where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection or omission, is cured by the verdict."

Appellant urges that it was entitled to a peremptory instruction at the close of the evidence for the reason that there was no competent evidence that appellee was knocked from the car by the roof of the shed. To that contention we cannot agree. The evidence discloses that appellee as a member of a switching crew went in on a siding with a switch engine to pick up certain loaded freight cars. After the coupling was made and while the switch engine was proceeding with the cars from the siding appellee went upon the roof of the cars to release the brakes. After performing that duty on the several cars being moved, while attempting to descend from the roof of the rear car of the cut by means of the ladder extending from the roof over its side at the rear end, in order to go ahead and throw the switch, appellee was knocked from the car and received the injuries. He admitted that he did not see what struck him as he was rendered unconscious by the blow. But he testified that he was knocked from the car by something. His evidence establishes that he did not inadvertently or by misfortune fall from the car but that he was knocked from it. He was found lying across one rail of the track on his back, his body about half on either side of the rail. He was found immediately under the corner of the shed standing alongside the track.

Within ten minutes after his injury the car from which he had been knocked was moved back to that portion of the track opposite the roof of the shed and actual measurements were made which demonstrated that there was between the edge of the car at the point where the ladder runs from its roof and the roof of the shed a clearance of only seventeen inches. In attempting to descend the ladder from the roof of the car as it was moving appellee was facing the opposite side of the track from the shed. His testimony established beyond question that while attempting to leave the roof of the car by means of the ladder provided for that purpose he was knocked from the car by something which he did not see. He was found lying across one rail of the track immediately under the shed. The measurements taken a few minutes later established beyond question that one undertaking to descend from the roof of the car from which appellee was knocked by means of the ladder provided for that purpose would necessarily be knocked from the car if it then were passing the shed. Nothing else was shown to have been so located as to knock him from the car. Under that state of case it can not be said that there was not sufficient evidence to make it a question for the jury as to whether or not appellee was knocked from the car by the roof of the shed.

Appellant urges that a peremptory instruction should have been given for it on the ground that appellee assumed the risk. Appellee meets that contention with the contention that appellant interposed no plea of assumed risk and that therefore its contention above can not be upheld. We think the answer to the question must be found in the evidence. Regardless of whether or not appellant has interposed a plea of assumed risk, if the evidence discloses that the injury has resulted from no negligence upon the part of appellant, then it must be held to be either the result of the ordinary risks of the employment which the servant assumed upon accepting it, or of his own negligence, and in either such case the master would not be liable and would be entitled to a peremptory instruction regardless of whether or not the plea of assumed risk had been interposed. The relative position of the spur track and the roof of the shed that knocked appellee from the freight car has heretofore been disclosed. In the performance of his duty, on the occasion in question, appellee mounted to the roof of the car next to the engine to release the brakes on the several cars

then being moved from the spur track. He proceeded from car to car until he had released the brakes on the last one. His duties then required that he descend from the roof of the car to throw the switch. As the cars were proceeding when he started down the ladder his back was to the roof of the shed that stood so close to the track. The proof establishes beyond controversy that the track as constructed and maintained by appellant was so close to the projecting roof of the shed that it would knock any of appellant's employes from a freight car which happened to be passing it when he tried to descend from the roof of the car by means of the ladder provided for that purpose. The question then is whether or not under those conditions the switchman upon accepting the employment assumed the risk of being knocked from the freight car by the roof of the projecting shed, thereby attributing the injuries to his negligence, upon the theory that by the exercise of ordinary care he might have discovered the danger and avoided it, or whether appellant's construction and maintenance of the spur track and the operation of its cars over same so close to the roof of the shed standing along the right of way that there was not sufficient clearance for its employes is the negligence to which the injuries appellee received may be attributed.

In C. & O. Railway Company of Kentucky v. Vaughan's Admrx., 159 Ky. 433, this court, in considering the question here presented, said:

"This court is committed to the doctrine that where it is possible to do so, the railroad company is required to place structures used in connection with its road at such distances from the track that they will not endanger its employes in operating trains, and when structures are placed in such proximity to the tracks that they endanger the servants while discharging their duty, the company is liable for injuries that occur without fault on the part of the employe injured. The rule has been applied to injuries caused by the following obstructions:

"A tunnel gauge, L. & N. R. R. Co. v. Roe, 142 Ky. 546, 134 S. W. 437; a signal pole beside the tracks, L. & N. R. R. Co. v. Hahn, 135 Ky. 251, 122 S. W. 142; cross-arm of a telegraph pole, L. & N. R. R. Co. v. Mulfinger, 80 S. W. 499; overhead bridge, C., N. O. & T. P. R. R. Co. v. Sampson's Admr., 97 Ky. 65, 30 S. W. 12; L. & N. R. R. Co. v. Cooley's Admr., 49 S.

W. 339; L. & N. R. R. Co. v. Tucker, 65 S. W. 453;
Hughes' Admr. v. L. & N. R. R. Co., 104 Ky. 774, 48
S. W. 671; Derby's Admr. v. Ky. Cent. R. Co., 4 S.
W. 303; freight car temporarily left on parallel and
adjoining tracks, Martin v. L. & N. R. R. Co., 95 Ky.
612, 26 S. W. 801; mail crane, L. & N. R. R. Co. v.
Milliken's Admr., 51 S. W. 796; projecting beam,
Nance v. Newport News, &c., R. Co., 17 S. W. 570;
portable coal chute, L. & N. R. R. Co. v. Hall, 115 Ky.
56, 74 S. W. 280; trolley pole, Finley v. Louisville
Ry. Co., 103 S. W. 343; L. & N. R. R. Co. v. Hardin's
Admr., 154 Ky. 282. The same rule of liability is ap-
plied by the federal courts and the courts of other
states. St. Louis, &c., R. Co. v. Connell, 187 Fed.
955; Railroad Co. v. McDade, 191 U. S. 64, 24 Sup.
Ct. 24, 48 L. Ed. 96; West v. C. B. & Q. R. Co., 179
Fed. 801, 103 C. C. A. 293; Railroad Co. v. Nichols,
57 Kas. 474, 46 Pac. 938; Railroad Co. v. Thompson,
210 Ill. 246, 71 N. E. 328.''

That doctrine, so long adhered to by this court, must
yet control us. In this case there appears to have been
no necessity for constructing and maintaining the spur
track so close to the shed built alongside of it as to be
dangerous to the trainmen in the discharge of their
duties. In fact, it appears originally to have been con-
structed leaving sufficient clearance to provide safety
for appellant's employes. It is not shown to have been
necessary to shift the track closer to the shed. That the
shed did not belong to appellant is of no moment under
the circumstances. This court has uniformly held that,
under the general rule that it is the duty of an employer
to furnish his employe a reasonably safe place to work,
trainmen may assume, while discharging their duties on
moving trains in the usual and customary manner, that
the place they are working is safe and are not required
to be on the lookout for obstructions along the right of
way that may injure them. Appellee testified that he
had not learned of the track being shifted so close to the
shed as to be dangerous and that he did not see the dan-
gerous condition or situation before he was injured.
In view of the rule announced in the authorities cited
above, from which the court has never departed, under
the facts of this case, it cannot be held that appellee as-
sumed the risk and that appellant was entitled to a per-
emptory instruction for that reason.

It is insisted for appellant that the damages awarded appellee are excessive and that the judgment herein should be reversed for that reason. The injury to appellee occurred October 5, 1922. He was carried to the hospital at Hazard, Kentucky, immediately thereafter and remained there three days. While there he was treated by Dr. Combs and Dr. Gross, surgeons employed by appellant. He then returned home. For some time after leaving the hospital appellee does not appear to have been treated by any physician, but continued to complain; and in February following was taken to Louisville, Kentucky, where he was given a thorough examination by Dr. D. Y. Keith, including the making of a number of X-ray pictures. Dr. Combs and Dr. Gross, who treated appellee immediately after his injuries, testified that they found appellee suffering from shock from the fall, but that from their examination of him which, according to their testimony, was as full as could have been except for the taking of X-ray pictures, they found no evidence of serious or considerable injury. They testified there were no bruises or abrasions to indicate an injury and that they found no evidence of the fracture of any bones.

Appellee testifying for himself has catalogued most of the aches and pains to which mankind is heir. They range from "pains in my head reaching into my right eye at times" to a condition of his feet from which "my toes draws down," as he describes them. But he is able to point to no particular injury he received as a result of being knocked from the car to which all his pain and suffering may be attributed. His testimony in its final analysis is to the effect that he was knocked from the car and has since suffered as described.

Testimony as to appellee's physical condition from medical experts was made for him by Dr. David I. Wolfstein, Dr. Guy Eckman and Dr. Wayne Pryse. The only evidence of injury to appellee found by Dr. Wolfstein is described in the following quotation from his testimony:

"There is a very marked tenderness, rather definitely localized, in the dorsal region of the back, at the points corresponding to about the lower dorsal vertebra. Percussion over said area produces evidence of flinching and pain, and the area is as above stated, localized. Deep pressure is also painful. I find no disturbance of sensation, nor any wasting of muscles. The reflexes are everywhere intact, nor is there any disturbance in the pupils or eyebrows."

Dr. Wolfstein then had appellee X-rayed by Dr. Lange, of Cincinnati. Dr. Wolfstein testified as to the condition disclosed by Dr. Lange's pictures as follows:

"Q. 8. From those pictures what did you find? A. The pictures showed some disturbance in the lamina of the 11th and 12th dorsal vertebrae, and some distortion of the discs between the vertebrae. Q. 9. In reading these plates did you notice a fracture anywhere about the 11th or 12th vertebrae? A. I could not state definitely that I noticed a fracture. There probably was a fracture, but I don't notice it now. That's what I mean to say. It looks to me as if there was some disturbance there, but I couldn't say from my reading that there was apparently a fracture."

Dr. Wolfstein further stated that from his examination of appellee he found his heart, lungs and urine normal. When questioned as to this opinion as to the permanency of appellee's condition, Dr. Wolfstein stated: "As to the permanency of said injury I am unable to state with positiveness; it is now present and will I fear continue present for some time."

Dr. Guy Eckman also testified for appellee, and the result of his examination is perhaps best given in his own language:

"He complained of so much pain and so many symptoms that I had him strip off, so I could examine his back carefully and see if I could find any irregularities in the spine, that I could detect from a physical examination at the time. Not being able to detect any gross lesions, I asked him over to Doctor Lange, in Cincinnati, for an X-ray picture of his spine, so we could see if there were any findings to explain his symptomology."

He was asked this question and made this answer on cross-examination:

"Q. Then if I understand you, doctor, when you made this examination in February, 1923, there was nothing you could find at the time which indicated to your mind that Mr. Lewis had sustained an injury; I mean, so far as your personal examination and observation went? A. No; for that reason I had him go to the picture man."

Dr. Eckman testified further that from his examination and inspection of the X-ray pictures made by Dr. Lange he found that appellee had suffered a fracture of the lamina of the 11th and 12th dorsal vertebrae. The following from Dr. Eckman's cross-examination speaks for itself as to the unsatisfactory nature of this doctor's testimony that the X-ray pictures taken by Dr. Lange disclosed that appelle had suffered a fracture of the lamina of the 11th and 12th dorsal vertebrae:

"Q. Is your opinion now, which you have expressed, based entirely upon your own examination of these X-ray pictures, or wholly or in part upon Dr. Lange's report in connection with them? A. In part on Dr. Lange's interpretation and my own interpretation. Q. Is evidence of a fracture of the lamina of the 11th and 12th vertebrae sufficiently clear in this photograph to enable you to say that there was a fracture, independent of any statement of Dr. Lange's? Do I make that clear? A. Yes, sir, you make that clear. If the picture were given me to read, in all human probability I would overlook that fracture, because I am not daily accustomed to reading pictures. But his interpretations called my attention to these lines that I possibly would have overlooked myself."

Dr. Lange, who took these X-ray pictures for appellee, did not testify herein and, of course, the X-ray pictures taken by him could not have been introduced in evidence and none of the testimony relative to what they showed would have been competent, in the absence of his testimony qualifying himself as an expert and properly identifying the pictures offered in evidence and disclosing that they correctly show the conditions purported to be shown by them. However, all those questions were waived by agreement of appellant's counsel. Dr. Wayne Pryse also testified for appellee, and his interpretation of the Lange pictures, as found in his testimony, is as follows:

"A. I have examined these pictures before. You want me to examine them now? Q. Yes. A. I find a curvature of the spine there, but no fracture in this picture. Q. Doctor, here is the picture you looked at last night, explain to the jury if you have examined that X-ray and tell the jury what you find? A. Well, in an examination you find a break in the con-

tinuity here in the back-bone, right here, this bone is shifted over here out of line, like it has been bumped up, you see, these back bones here you see how they come down here straight, when you get right here (indicating) you have got your break in the continuity. Q. You mean a break in the bone? A. No, a break in the continuity, in the bend, it can be shown very easily here (indicating); you see here this is straight spinal cord comes out is perfect continuity, that is, comes up in a straight line; right here (indicateing) is where you get your break, here, you see here, the bend, the break in the continuity of the bone.''

Dr. Pryse examined appellee some time after both Dr. Wolfstein and Dr. Eckman had examined him, and stated that from his own examination, independent of the X-ray pictures, he thought he discovered a fracture of one of the vertebrae and an enlargement on one of the vertebrae. He also discovered, according to his testimony, something which none of the other doctors speak of and something about which, among the other various members and organs of the body causing him pain and suffering, appellee himself did not testify; that is, Dr. Pryse discovered ''a turning in or crook of the bones which make up the coccyx.''

Dr. Keith, who took the first X-ray pictures of appellee and who qualified as an expert and properly identified his pictures and made them competent, testified unqualifiedly that his pictures of appellee show that he has received no fracture or injury to any of the bones of his spine. A number of other medical experts who examined the Keith pictures likewise so testified. Dr. Keith and the other medical experts introduced for appellant testified also that the Lange pictures introduced for appellee showed no fracture or injury to any of the bones of appellant's spine. It appears then that the experts for appellant and those for appellee differ as to whether he was injured by the fall, the former testifying that he was not, the latter that he was. Appellee's experts differ among themselves as to the situs and nature of the injury and its probable permanency as indicated by the quotations from their testimony. Appellee was confined to the hospital only three days following the injury. From then, early October, until mid-February, he was not under the care of a physician at all. At that time a thorough examination, even to the taking of X-ray pictures by skilled experts, disclosed no injury. It was

May following before appellee consulted a physician on his own account.

This court is committed to the doctrine that when a verdict for personal injuries is so large that it could be sustained only if the injuries are permanent, there must be positive and satisfactory evidence of permanency. I. C. Railway Company v. Basham, 183 Ky. 439; Illinois Central Ry. Co. v. Houchins, 121 Ky. 526, 89 S. W. 530; Watson v. Brightwell, 82 S. W. 454; L. & N. R. R. Co. v. Reaume, 128 Ky. 90, 107 S. W. 290; Louisville Sou. R. Co. v. Mattingly, 38 S. W. 686; Ky. Wagon Mfg. Co. v. Shake, 137 Ky. 742, 126 S. W. 1095. It must be conceded that a verdict for $25,000.00 is so large that it can be sustained only if the injury is permanent. The evidence to establish that appellee's injuries are permanent is too uncertain and unsatisfactory to measure up to the rule, *supra*. Under all the facts and circumstances of this case the court cannot escape the conviction that a verdict for $25,000.00 reflects passion and prejudice upon the part of the jury rather than a deliberate conclusion reached after an unbiased consideration of the evidence herein. The court holds the judgment to be excessive.

Appellant complains of the instructions by which the issues were submitted to the jury. Without a discussion of the questions raised, upon another trial the court in instructing the jury, in lieu of the instructions formerly given, will conform to and be guided by this opinion.

For the reasons indicated the judgment herein is reversed and this cause remanded for further proceedings consistent herewith.