## Louisville & Nashville Railroad Company v. Wright.

(Decided January 16, 1920.)

## Appeal from Franklin Circuit Court.

1. Master and Servant—Appliances—Damages—Instructions.—In an action for damages an instruction upon defective appliances is improper when the case is predicated solely upon negligence in the operation of the train and the defective appliances were not pleaded.

2. Master and Servant—Negligence—Instructions.—Where an instruction submitting the case for such injuries as resulted from alleged negligence of the engineer after learning of plaintiff's peril, was given, held, that the jury should have been further instructed that the engineer was only bound to exercise ordinary care, in good faith, and in accordance with his best judgment.

3. Master and Servant—Appliances—Negligence.—Knowledge by the engineer and lack of knowledge by plaintiff, of a defective appliance, were elements of any liability resulting from an operation that was negligent only because of such defective appliance, and should have been submitted for the jury's consideration in determining such liability.

BENJAMIN D. WARFIELD and GUY H. BRIGGS for appellant.

LESLIE W. MORRIS for appellee

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal by the defendant, Louisville & Nashville Railroad Company, from a judgment for $11,000.00 recovered by the plaintiff, now appellee, for personal injuries.

Plaintiff was a fireman and the action is based upon the alleged negligence of the engineer in the operation of the engine. The train to which this engine and another were attached had gone into a siding to allow another train to pass it. When it started to leave the side track the engineer was in his seat on the right hand side of the engine, where it was his duty to be, and the fireman's position was unknown to him, the boiler being so high and extending back so far neither the engineer nor fireman could see the other.

The siding joined the main track on the fireman's side of the engine, and on a curve of about 18 degrees by reason of which the engineer could not see the switch. It was the duty of the fireman under such circumstances to observe the switchman from his side of the engine

and communicate to the engineer signals given by the switchman. A seat on the fireman's side of the engine was provided for his use when not engaged in firing the engine, which was also much used by the head brakeman when not engaged in the performance of his duties on the train or in throwing switches.

On this type of engine the boiler extends back through the center to near the rear of the cab; the tender is coupled on to the cab with an iron apron covering the open space between the cab and tender. Beneath this apron is a device called a shackle-bar weighing some four or five hundred pounds which holds the cab and tender apart and when in proper condition prevents play or slack in excess of about one-half inch between the cab and tender. The apron extends clear across this intervening space and forms the floor to the entrances to the engine from either side. In the center of the front of the tender is an open space which is some five or six feet long in which the fireman stands when firing the engine. The frame of the tender forms one side of each entrance to the engine, the frame of the cab the other. The entrances are about 24 to 30 inches wide. As the train started out of the siding plaintiff instead of taking his position on the seat in the cab, where he could have performed his duties with reference to transmitting signals from the switchman to the engineer, stood in the entrance on his side of the engine leaning with his back against the tender, his left foot on the apron and his right foot upon a step that leads up to the seat in the cab. As the engine reached the abrupt part of the curve the space, in which plaintiff was standing or leaning, contracted, catching and pushing his right knee back against his body and up under his right arm, dislocating his right hip and rupturing the tendons about his right knee.

If plaintiff had been in his seat, where defendant insists he should have been, or even standing erect in the entrance, the accident could not have happened. Whether his taking the peculiar position he did between the engine cab and tender was the proximate cause of the accident, and such contributory negligence as a matter of law as defeated his right of recovery is the first question presented.

We prefer, however, to leave open this question and all others except such as are expressly decided, since a reversal must be ordered for reasons which upon another trial will doubtless result in an amendment of the plead-

ings and the presentation of a new issue, which may have some bearing upon this and other questions now presented.

The judgment must be reversed because the case, though predicated solely upon negligence in the operation of the train, was submitted upon defective appliances, which must be pleaded before a recovery can be had because thereof. L. & N. R. Co. v. Irby, by &c., 141 Ky. 145; Ohio Valley C. & M. Co. v. Heine, 159 Ky. 586; Dickerson v. Bornstein, &c. Co., 144 Ky. 19; Daniel Boone Coal Co. v. Turner, 181 Ky. 756.

Counsel for plaintiff argue that the instructions submit only negligence in the operation of the train. The instructions however authorized a verdict for plaintiff "if the jury believe from the evidence that defendant's engineer or either of them negligently and carelessly operated said train and engines or engine with more slack than was reasonably safe under the circumstances proven in this case."

Plaintiff introduced much evidence to the effect that the shackle bar was defective and allowed much more play or slack between the engine cab and tender than was customary or safe, which was certainly evidence of a defective appliance, and which it was shown could not have been corrected by the engineer or except at the company's shops. The effect of the portion of the instructions above quoted was necessarily and unquestionably to authorize a finding if the jury believed the engineer of the front engine was negligent in operating his engine (and there should have been no reference in any of the instructions to the other engine or its engineer as no negligence was attributed to him) with more slack, as a result of a defective appliance, than was reasonably safe. While no doubt a negligent operation of a defective appliance might be submitted properly and independently, it would be necessary to include in such a submission the question of knowledge of such conditions by both the plaintiff and defendant, just as in submitting the question of a defective appliance. This is practically conceded by counsel both by their efforts to prove knowledge of the defect by the engineer and lack of such knowledge by plaintiff, as well as by their argument presenting these facts as evidence of negligence by the engineer in the operation of his engine, and lack of negligence upon the part of plaintiff. Conceding therefore that a train with a defective appliance could be negligently op-

erated so as to render the company liable for such negligence, independent of its liability for negligence for failure to provide a safe appliance, such liability would necessarily rest upon an operation by the engineer with knowledge of the defective appliance not possessed by the plaintiff: for unless the engineer had such knowledge there could be no negligence upon his part as a result of such condition, and if the fireman knew of same he took his chances on such injuries as might reasonably be contemplated therefrom.

Therefore knowledge by the engineer and lack of knowledge by the plaintiff, of the condition of the appliance, were elements of any liability resulting from an operation that was negligent only because of a defective appliance and should have been submitted to the jury for their consideration in determining such liability; otherwise in every case where a defective appliance is relied upon partially, if not wholly, the question of knowledge could be eliminated by the simple device of placing the liability upon a negligent operation with a defective appliance, rather than upon the failure to furnish a reasonably safe appliance, and the whole law with reference to defective appliances responsible in part, if not wholly, for an injury to an employee, would be changed, or, rather, the question of knowledge might be thus easily evaded. Not only so, but the only proof of any negligence by the engineer in the first instance is that he shut off steam on his engine, thereby causing the slack or play between the cab and tender to close on plaintiff; but there was no proof to show that this, if true, was negligence, because there is absolutely nothing in the evidence to indicate that an injury to plaintiff or anyone else might result therefrom, except upon the hypothesis that the engineer knew or ought to have known of plaintiff's peculiar position between the cab and tender, and that the shackle bar was defective, neither of which facts was submitted, and of the first there was no proof whatever.

It is also claimed the engineer was shown to be guilty of negligence in failing to stop his engine immediately upon learning of plaintiff's peril. It was as the engine rounded the abrupt part of the curve about 150 feet from the switch that the cab and tender caught plaintiff and began to push his knee backward under his arm. He immediately cried out and the engineer, without stopping the engine, as he says, although plaintiff claims he had

previously shut off the steam and thus caused his predicament, immediately got down from his seat and came to where he could see plaintiff and learn what was the matter with him. He then tried to pull plaintiff out and failing in that stopped the engine as he says, and backed it off of the curve as quickly as he could so as to release plaintiff. Plaintiff states, however, that the engineer did not stop the train but ran it out on to the reverse curve at the switch, thus releasing him, and that the major portion of his injuries resulted from running the train forward rather than backing it off of the curve. Upon this evidence the court attempted to submit the case for such injuries as resulted from negligence, if any, upon the part of the engineer after he learned of plaintiff's peril. As a further qualification of the instruction upon this question defendant offered an instruction telling the jury in substance that the engineer, after discovering plaintiff's peril, was not bound to adopt the best or safest method of releasing him, but only to exercise ordinary care in good faith and in accordance with his best judgment. This instruction, refused by the court, was copied substantially from Mathews' Admr. v. L. & N. R. Co., 130 Ky. 551, and with such changes as the facts of this case required, should have been given.

No one is required to act in an emergency such as this except in good faith, and in accordance with his best judgment under the circumstances as they then appeared to him, provided he did not fail to exercise ordinary care, and without such an instruction the jury may have placed a liability upon a failure to adopt the method for plaintiff's relief that upon deliberation they considered the safest and wisest course to pursue. Such is not the law. See in addition to the Matthews case, *supra,* L. & N. R. Co. v. Stokes' Admx., 166 Ky. 142; L. H. & St. L. Ry. Co. v. Jolly's Admr., 28 Ky. L R 989; L. & N. R. Co. v. Benke's Admr., 164 Ky. 798; Reynolds' Admr. v. C. N. O. & T. P. Ry. Co., 148 Ky. 252.

Counsel for plaintiff do not question this principle of law, but insist the customary instruction defining ordinary care sufficiently covered the point. We think not, however, especially where the defendant offers specific instruction on the question.

For the reasons indicated the judgment is reversed and the cause remanded for a new trial not inconsistent herewith.