# Idol v. Louisville & Nashville Railroad Company

(Decided May 9, 1924.)

## Appeal from Kenton Circuit Court (Common Law and Equity Division).

1. Statutes—State Employers' Liability Act Valid as Affecting Intra-state Commerce.—State Employers' Liability Act is valid as far as it affects intrastate commerce, though by its terms it applies to both intrastate and interstate commerce; Congress having legislated as to interstate commerce by federal Employers' Liability Act (U. S. Comp. Stats., sections 8657-8665).

2. Statutes—Act Adopting Language of Federal Statute Presumed to have Adopted Court's Construction.—State Employers' Liability Act having adopted language of federal Employers' Liability Act (U. S. Comp. Stats., 8657-8665), it is presumed that legislature adopted such language as previously construed by federal Supreme Court.

3. Master and Servant—Employers' Liability Act Applies to Employes Only While Engaged in Commerce.—State Employers' Liability Act applies only when carrier and person injured are "engaged in commerce."

4. Master and Servant—Machinist in Roundhouse Held Not Engaged in "Commerce," Within Employers' Liability Act.—Machinist setting valves on railroad engine in roundhouse for some days, and his employer, the railroad, held not engaged in "commerce," within the state Employers' Liability Act.

5. Master and Servant—Averments of Knowledge Necessary Under Unsafe Place Doctrine.—"Unsafe place doctrine" cannot be relied on, unless it be averred that defendant knew, or by exercise of ordinary care could have known, of unsafety, and plaintiff did not know it, or could not have discovered it by exercise of ordinary care.

O. M. ROGERS and R. G. WILLIAMS for appellant.

ASHBY M. WARREN, S. D. ROUSE and WOODWARD, WARFIELD & DAWSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, L. R. Idol, was employed by appellee and defendant below, Louisville and Nashville Railroad Company, as a machinist in its roundhouse in Corbin, Ky., and a part of his duties was to set valves on defendant's engines when needed and when requested to do so. He had performed the same kind of work for different employers for a number of years, and on December 3, 1921, he had been working for defendant in the same capacity for something like two years. On

that day at about 8:30 p. m. he sustained the injuries for which he seeks to recover damages by this action filed by him in the Kenton circuit court, where he resided, under the Federal Employers' Liability Act. As a necessary averment he alleged in his petition that the defendant at the time was a common carrier and then engaged in interstate commerce, and that the work he was then performing and in which he was then engaged was a part of such commerce. He averred general negligence of the defendant, its agents, servants and employees in the conduct of its interstate business resulting in his injuries while he was setting valves on a particular locomotive engine as an instrument then being used by defendant in its interstate business, and that because of such negligence the engine, while slowly moving backwards, pushed him through an outside door to its roundhouse whereby he was brought in contact with the door facing and sustained the injuries for which he sued.

The answer specifically denied the averments of the petition and also pleaded contributory negligence, which under the allegations of the petition would only go in mitigation of damages, if true, and assumption of risk. Those two defenses were denied in the reply followed by the introduction of plaintiff's testimony, at the close of which he filed, over defendant's objections, an amended petition, in which he stated "that he withdraws each and every allegation in said petition contained with reference to being employed in interstate commerce at the time of the injuries complained of." He then averred and particularized the negligence of defendant upon which he relied, which was (a), that it failed to furnish him a safe place in which to perform his work in the manner it was required to be done, in that the door facing with which his body came in contact was set so as to be too close to the engine as it passed through the door, and that defendant knew of the conditions producing the danger; but he did not aver that he was ignorant of such facts or that he could not discover them by the exercise of ordinary care; and (b.), that another agent or servant of defendant, who was assisting and helping the plaintiff in his work, was himself negligent in not signaling those in charge of the engine to stop it before it reached the door facing, and in not notifying plaintiff in time to prevent him reaching and coming in contact with the door facing, since, as averred, it was necessary for him to watch the revolutions of the engine wheels so as to

make required and necessary marks when the engine was on center to enable him to properly set the valves. It was not averred in that amendment that either plaintiff or defendant was engaged in intrastate commerce at the time of the accident, and since the averments in the original petition as to the engagement of the parties in interstate commerce at the time were expressly withdrawn, the amendment left the pleadings as only charging defendant with being a common carrier and without alleging that at the particular time it was engaged in any character of commerce. The amendment was denied, followed by a motion from defendant's counsel for a peremptory instruction in its favor, which the court sustained and the jury returned a verdict, as directed, upon which the court rendered judgment dismissing the petition, to reverse which plaintiff prosecutes this appeal.

It is admitted that the twofold purpose of the amendment was to specify the negligence relied on, and to convert the action from one brought to recover under the Federal Employers' Liability Act to one under the State Employers' Liability Act, enacted at the 1918 session of the General Assembly and is chapter 52, page 153 of the Acts for that session, and now sections 820b-1 to 820b-3, both inclusive, of the present edition of the Kentucky Statutes. Defendant seeks to avoid the application of that act on the ground that the legislature exceeded its authority in enacting it, because its terms apply to both interstate and intrastate commerce, although it is conceded by learned counsel that its enactment was within the power of the legislature, if it had been worded so as to be confined to only *intrastate* commerce instead of being couched in language broad enough to include both classes. In support of that position, the opinion of the Supreme Court in the Employers' Liability Cases, 207 U. S. 463, is relied on. In that opinion the first Federal Employers' Liability Act was held unconstitutional on the ground that as enacted it applied to both interstate and intrastate commerce, and since Congress had authority to legislate only as to the former, the whole act was void. We do not regard the situations as analogous, since Congress in no event had authority to legislate with reference to intrastate commerce, while the legislature of a state might do so in the exercise of its police power and as applicable to that portion of interstate commerce performed within its boundaries, so long as Congress under its constitutional power had not acted on the sub-

ject. 12 Corpus Juris, 74-5, and numerous federal opinions in note 97 to the text; also same volume, page 16, wherein the right of a state legislature to legislate so as to affect interstate commerce when Congress has not acted upon the subject is discussed and dealt with. The first reference discusses exclusively the precise question here involved. In the latter reference the universally recognized rule is thus stated: "As most frequently stated, the rule is that a state may legislate with reference to local needs, although interstate commerce is affected, where the matter regulated is not of a national character and does not admit of nor require a uniform system of regulation, and where there has been no congressional legislation in respect thereto, it being deemed that the failure of Congress to take any action as to matters of a local nature or operation, unlike its inaction on matters affecting all the states and requiring uniformity of regulation, does not amount to a declaration that nothing shall be done as to such matters by the state, but on the contrary, it is rather to be deemed a declaration that for the time being, and until Congress sees fit to act, they may be regulated by state authority." Some of the numerous cases from this court, that recognize the power of the state to legislate upon the *particular* subject under consideration in the absence of congressional action, are: Cincinnati, etc., Railroad Co. v. Clarke, 169 Ky. 662; L. & N. Railroad Co. v. Stewart, 157 Ky. 642; Same v. Strange, 156 Ky. 439; I. C. Railroad Co. v. Doherty, 153 Ky. 363, 47 L. R. A. (N. S.) 31; McGarvey's Guardian v. McGarvey's Admr., 163 Ky. 242; Western Union Telegraph Co. v. Lee, 174 Ky. 210, and Hines v. Burns, 189 Ky. 761. If, therefore, the Kentucky Employers' Liability Act had been enacted prior to that of the federal act, the former would still apply to common carriers while engaged in intrastate commerce, the federal statute superseding it as to transactions arising out of interstate commerce but transpiring within the borders of the state. The fact that the state statute was enacted after Congress had attempted to cover the field of interstate commerce would not, in our judgment, invalidate it as applicable to intrastate commerce, a subject over which the state has exclusive authority and concerning which in no event may the Federal Congress take jurisdiction. We, therefore, hold that the state statute is valid as to carriers engaged in intrastate commerce and its terms govern the procedure in cases therein provided

for; and for the purposes of this case, we will treat the petition and amended petition both together as sufficient to bring the case within the terms of that statute, although we entertain some doubt upon that point.

It is stated in brief of plaintiff's counsel, and it is true, that the Kentucky act of 1918 is in all of its parts, affecting the question here involved, "copied from the federal act." Common language found in section 1 of both acts is "that every common carrier by railroad while engaged in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, docks, boats, wharves or other equipment." A succeeding section in each act provides that in actions brought thereunder contributory negligence on the part of plaintiff shall not bar the action, but be considered only in mitigation of damages, except where the negligence complained of was the violation of some statute enacted for the safety of employees; and a later section abolishes assumed risk in all cases where the carrier was guilty of violating some statute enacted for the same purpose. So that each statute applies only to carriers "while engaged in commerce" and to employees when they are "employed by such carrier in such commerce;" which, as to the federal statute, is confined to interstate commerce, while the state statute applies only to intrastate commerce. In both of them the carrier must be engaged at the time of the accident "in commerce," and the employee must be engaged in some act contributing to that commerce. It, therefore, becomes necessary to determine what the respective legislative authorities meant by the use of those terms.

In construing the federal statute, the Supreme Court in the case of I. C. Railroad Co. v. Behren's Admr., 233 U. S. 473, quoting from Pedersen v. Delaware, etc., Railroad Co., 229 U. S. 146, said: "There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employe is employed by the carrier in such commerce;" and in Delaware, etc., Railroad Co. v. Yurkonis, 238 U. S. 439, it was held by the same court that an employe for an interstate car-

rier in mining coal with which to fire engines pulling inter-
state commerce did not come within the provisions of the
federal act because neither he nor the railroad company
while the coal was being mined were engaged "in com-
merce" within the meaning of the act. In Shanks v. the
same Railroad Company, 239 U. S. 556, the employe was
at the time of the accident working in a shop used by
the carrier to repair parts of its locomotives engaged in
both *intrastate* and *interstate* commerce, and sustained
his injuries while engaged in the act of removing an
overhead counter shaft used in that shop and which was
necessary to the operation of its machinery therein. The
opinion pointed out that before a recovery could be had
under the federal act it must be shown not only that the
plaintiff was "engaged in commerce," but that it must
be interstate as contradistinguished from intrastate
commerce, and that plaintiff therein was engaged in
*neither* at the time he sustained his injuries, the court
saying: "That the true test of employment in such com-
merce in the sense intended is, was the employe at the
time of the injury engaged in interstate (intrastate state
under the Kentucky act) *transportation*, or in work so
closely related to it as to be practically a part of it."
Following that case the same court had before it the one
of Minneapolis & St. Louis Railroad Co. v. Winters, 242
U. S. 353. In that case plaintiff was repairing an engine
when he sustained his injuries. It had been used by de-
fendant before placing it in the shop in hauling both
kinds of commerce. The last time was on October 18, be-
tween which and the 21st the accident happened, and on
the latter date it was again used. The court, in denying
plaintiff's right to maintain the action under the statute,
said:

> "This is not like the matter of repairs upon a road
> permanently devoted to commerce among the states.
> An engine as such is not permanently devoted to any
> kind of traffic, and it does not appear that this engine
> was destined especially to anything more definite
> than such business as it might be needed for. It was
> not interrupted in an interstate haul to be repaired
> and go on. It simply had finished some interstate
> business and had not yet begun upon any other. Its
> next work, so far as appears, might be interstate or
> confined to Iowa, as it should happen. *At the moment
> it was not engaged in either*. Its character as an in-

strument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events.''

The court clearly pointed out the distinction between preparing to engage in commerce and actually engaging in it; which is also done in the cases of United States v. Knight, 156 U. S. 1, and Kidd v. Pearson, 128 U. S. 1. Following the Winters case the Supreme Court had before it the one of Industrial Accident Commission v. Davis, Agent, 259 U. S. 182, and in dealing with the question now under consideration the opinion said:

"Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement—indeed, are necessary to it; but so are all attached to the railroad company—official, clerical, or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employe, at the time of the injury, must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act. And there is a difference in the instrumentalities. In some, the tracks, bridges, and roadbed and equipment in actual use, may be said to have definite character, and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character, according to circumstances; and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. There may be only a placement upon a sidetrack or in a roundhouse, the interruption of actual use, and the return to it, being of varying lengths of time; or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations—the relations of a workshop, its employments and employes having cause in the movements that constitute commerce, but not being immediate to it.

"And it is this separation that gives character
to the employment, as we have said, as being in *or
not in commerce.*"

The engine in this case, upon which plaintiff was
working, had been in the shop since November 13 before
his accident on December 3, and while, under the proof,
*it* had not made any interstate trips for some time prior
thereto, nor any such trip immediately following the ac-
cident and after it was removed from the shop, yet it is
shown that while so making itself only intrastate trips it
hauled interstate freight, thereby making it during such
times engaged in interstate commerce as contradistin-
guished from intrastate commerce. However, at the time
of the accident to plaintiff, it under the opinions of the
Supreme Court, *supra,* was not engaged in commerce at
all either interstate or intrastate, since it was temporarily
withdrawn from commerce, and from service and was
placed "in new relations—the relations of a workshop,"
where, under the opinion in the Davis case neither its em-
ployment nor the carrier's employes were engaged in
movements that constitute commerce or any acts immedi-
ate to it.

Some of the opinions referred to from the Supreme
Court were rendered before the enactment of our statute,
and under a well known rule of construction the presump-
tion would be that our legislature adopted the language
of the federal statute as construed by the federal Supreme
Court. We can find no escape from that conclusion,
since necessarily there should be some line drawn sep-
arating acts performed by both the carrier and its em-
ployees while "engaged in commerce," and those per-
formed while not so engaged, for clearly it was not the
intention of the enacting authority, either state or fed-
eral, to make the statute applicable to all acts or en-
gagements of common carriers which were or might be
necessary to be performed in remote aid of transporta-
tion. Hence, the definition formulated by the Supreme
Court is, that the particular engagement out of which
the accident occurred must be one in *actual transporta-
tion,* "or in work so closely related to it as to be prac-
tically a part of it." Shanks case, *supra,* and C. B. & Q.
Railroad Co. v. Harrington, 241 U. S. 177. It will be ob-
served that the statute is not made applicable because the
defendant is a common carrier, but only when as such
carrier both it and the injured servant are "engaged in

commerce,'' which term the opinions of the Supreme Court, *supra,* expressly limited, as hereinbefore indicated. The conclusion, therefore, seems inevitable that neither plaintiff nor defendant was engaged ''in commerce'' of either classification (interstate or intrastate) at the time of the happening of the accident, and the provisions of the local statute are therefore inapplicable.

That being true, it is conceded that the ''fellow servant doctrine'' is applicable between plaintiff and his alleged negligent assisting servant, wherein the latter failed, either to signal those in charge of the engine to stop it, or to notify plaintiff to stop before the door of the roundhouse was reached; and we will consume no space in this opinion in citing cases from this court holding the two to be fellow servants, which we understand counsel to concede in his brief.

However, he seeks to avoid the effect of that doctrine on the ground that the negligence of a fellow servant, when that doctrine is applicable, is not a defense unless it is the sole proximate cause of the injury, and he relies upon ground (a) in his amended petition as an independent act of negligence which in conjunction with that of his fellow servant he avers produced the injury. There would be much force in the argument were it not for two facts which are, that the negligence of defendant in failing to furnish plaintiff a reasonably safe place in which to perform his work is not properly alleged in the amended petition or any other pleading. It is the undoubted rule that the ''unsafe place'' doctrine can not be relied on unless it be averred that defendant knew, or by the exercise of ordinary care could have known, of the unsafety of the place, *and* that plaintiff did not know it or could not have discovered it by the exercise of ordinary care. L. & N. Railroad Co. v. Irby, 141 Ky. 145; Buckley's Admrx. v. City of Covington, 143 Ky. 717; L. & N. Railroad Co. v. Wright, 186 Ky. 498, and numerous other ones referred to in the Irby case. Besides, plaintiff knew the exact location of the door frame; it had been so constructed and the roundhouse so used since 1905, and plaintiff had performed the same character of work under the same conditions for a long while prior to sustaining his injuries and according to both his allegations and testimony he relied on his fellow servant to perform his duty in relieving him from the alleged but well known danger relied on by him as rendering the place unsafe. And, under such circumstances, it would seem that the negli-

gence, if any, of the fellow servant was the proximate as well as the sole cause of the injury. But, whether so or not, plaintiff's pleading, as we have seen, is not sufficient to entitle him to rely on the cause of action in his favor based upon the failure of defendant to furnish him a safe place in which to work; which leaves the negligence of his fellow servant as the only properly pleaded ground for recovery.

After a careful consideration of the whole case, we are constrained to the conclusion that the judgment must be and it is affirmed.