## Chesapeake & O. Ry. Co. et al. v. McCracken.

(Decided June 13, 1933.)

BROWNING & DAVIS for appellants.
M. HARGETT for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

John T. McCracken instituted this action against the Chesapeake & Ohio Railway Company seeking to recover damages for personal injuries alleged to have been sustained while employed in the company's yards at Stevens in Campbell county. Trial before a jury resulted in a verdict and judgment for plaintiff in the sum of $1,000, and defendant is prosecuting this appeal.

As grounds for reversal, it is argued in brief by counsel for appellant (1) that the negligence, if any, alleged and proved was that of a fellow servant of appellee, and therefore he was not entitled to recover; (2) that no negligence was shown by the evidence; (3) that instruction No. 1 given by the court is erroneous.

Briefly stated, the evidence in substance shows that there are a number of tracks in appellant's yards at Stevens, among which is one known as track No. 11 adjacent to a house in which supplies are kept. All engines from both east and west bound freight trains

coming into the yards are uncoupled from the train and run onto track No. 11 by the engineer, where they are left in front of the supply house.

For some time appellee had been employed by appellant as a supply man, and his duties required him to check the tools, fill and clean the lanterns on the engines, and to procure from the supply house tools to replace any found to have been lost. After the tools were checked and assembled, he would place them in the tool box on the tender and lock the door or lid to the box. When his duties in connection with the engine had been completed, it was the duty of another employee of the company known as a hostler to remove the engine to the ash pit or roundhouse. Live engines were usually moved by their own power, but dead engines were coupled onto and pulled by other engines; however, at times when there were two or more engines, they would be coupled and moved together. Appellee testified, as also did one of the foremen in charge of the roundhouse and yards, that it was the duty of the hostler to await orders or signals from the supply man that the work of checking supplies and tools had been completed before he attempted to move the engine.

On June 25, 1925, appellee had finished checking and assembling the tools on an engine, and had placed them in the box and was attempting to lock the door. The door was sprung or warped, and, in order to get it in place so it could be locked, he placed his back against the cab of the engine and his knee against the door. While in this position the hostler drove another engine against the one upon which he was working, thereby causing the slack between the engine and tender to be taken up and injuring appellee's knee and leg, and causing him to fall from the cab to the ground.

It is argued by counsel for appellant that it was neither alleged nor proved that appellee was employed within interstate or intrastate commerce, and therefore the common-law defense of fellow servant is available. Section 820b-1, Kentucky Statutes, provides:

"That every common carrier by railroad while engaged in commerce in this state shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in case of the death of such employee, to his or her personal representative for such injury or death

to such employee resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, docks, boats, wharves or other equipment.''

There is a federal statute of similar import with respect to interstate commerce. 45 USCA sec. 51.

It is contended by counsel for appellee that the quoted section of our statute applies in this case; but, if it should not be held to apply, appellee and the hostler were, in no event, fellow servants, and that appellant is liable in damage for the injury complained of.

The conclusion we have reached with respect to the effect of section 820b-1, supra, when applied to the instant case, renders it unnecessary to enter into a discussion as to whether, apart from the statute, the supply man and the hostler were fellow servants.

Prominent among the cases relied on by appellant are those of Idol v. Louisville & N. R. Co., 203 Ky. 81, 261 S. W. 878, 881; and Louisville & N. R. Co. v. Morgan's Administrator, 225 Ky. 447, 9 S. W. (2d) 212. In the latter case it was held that a member of a construction crew engaged exclusively in blasting operations preparatory to laying new railroad tracks was not engaged in interstate or intrastate commerce within the meaning of the state or federal statutes, supra. While in this opinion there is an extensive discussion of the fellow servant doctrine and of the scope and effect of the statutes in question, it is at once apparent that the case is neither directly nor by analogy in point here. In the Idol Case it was held that a machinist repairing or setting valves on a railroad engine in a roundhouse was not engaged in intrastate commerce within the meaning of the state or federal statutes. As appears from the opinion, the engine upon which the machinist had been working had been placed in the repair shop on November 13, where it remained until December 3, when the accident occurred. The opinion, after citing a number of federal cases, and quoting at length from some of them, said:

"We can find no escape from that conclusion, since necessarily there should be some line drawn separating acts performed by both the carrier and its employees while 'engaged in commerce,' and

those performed while not so engaged, for clearly it was not the intention of the enacting authority, either state or federal, to make the statute applicable to all acts or engagements of common carriers which were or might be necessary to be performed in remote aid of transportation. Hence the definition formulated by the Supreme Court is that the particular engagement out of which the accident occurred must be one in actual transportation, 'or in work so closely related to it as to be· practically a part of it.' "

In one of the excerpts quoted from Industrial Accident Commission v. Davis, Agent, 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888, there is a discussion of the relation of the employment to the operation of the instrumentalities of the railroad, and in drawing a distinction between those employed in commerce and those not so employed it is, in part, said:

"And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the· time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. There may be only a placement upon a sidetrack or in a roundhouse—the interruption of· actual use, and the return to· it, being of varying lengths of time, or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations. * * *"

In the proven facts and circumstances, the conclusion is inescapable that appellee's work was so closely related to actual transportation as to be a part of it and to bring the case within the provisions of the statute.

Under the respective duties of the supply man and the hostler, as hereinbefore indicated, the. former was under no duty or obligation to anticipate that the latter would move the engine until he had received a signal or instruction so to do. The evidence that he gave no signal or warning of the approach of the other engine or of his intention to couple the two is uncontradicted. So, wholly apart from any question of unusual or un-

necessary force in making the coupling, it is manifest that argument that there was no proof of negligence is without merit.

Instruction No. 1 is criticized because it does not, in concrete form, set out the duties owed appellee, but is so abstract in form as to leave both the law and the facts to the determination of the jury. As already indicated, it is established by uncontradicted evidence that Wrightman, the hostler, in violation of his duties, attempted to move the engine before he received a signal of instruction from appellee, and not only so, but brought the engine he was driving in contact with the one upon which appellee was at work without giving warning or signal of his approach. In the light of the evidence, it is apparent that the instruction complained of fairly submitted the issues to the jury, even though abstract in its nature, and was not prejudicial to appellant.

Judgment affirmed.